STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Dennis J. DOWNING, Respondent.

SCBD No. 3843.

Supreme Court of Oklahoma.

April 13, 1993.

Rehearing Denied Nov. 2, 1993.

Disbarred.

Mike Speegle, Asst. Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

Robert G. Green, Tulsa, for respondent.

## OPINION

WATT, Justice:

Prior to February 5, 1991, respondent, Dennis J. Downing, was a member of the Oklahoma Bar Association ("OBA") and licensed to practice law by this Court. On October 2, 1990, this Court issued an opinion in which we suspended respondent's license to practice law for a period of four years. Upon the denial of respondent's motion for rehearing, the order of suspension became final on February 4, 1991. *State ex rel. Oklahoma Bar Ass'n v. Downing*, 804 P.2d 1120 (Okla.1990). The order of suspension has been in full force and effect since that date.

On September 22, 1992, the OBA filed a three count complaint against respondent alleging that he committed various acts of professional misconduct, including engaging in the unauthorized practice of law. A trial panel was convened under this Court's *Rules Governing Disciplinary Proceedings*, 5 O.S.1991, Ch. 1, App. 1–A. Following a hearing on November 17, 1992, the trial panel found that Counts I and III had been established by clear and convincing evidence. The panel has recommended that respondent be disbarred.

■ As a preliminary matter, we must first address respondent's claim that this Court lacks jurisdiction to conduct these proceedings. Respondent contends that any lawyer suspended from the practice of law for more than two years falls into the same category as a lawyer who has been disbarred, in that both are required to petition for reinstatement. *See* Rule 11.1 of the *Rules Governing Disciplinary Pro-*

*ceedings.* Because "[t]here is no presumption that a lawyer disbarred or ... suspended for more than two years will ever apply for reinstatement," respondent asserts, he is not bound by or subject to the rules governing professional conduct or disciplinary proceedings. This argument is patently frivolous. This Court possesses original and exclusive jurisdiction not only in matters involving attorney discipline, but also as to matters involving *"any other persons ...* engaged in the unauthorized practice of law." *Rules Governing Disciplinary Proceedings,* 5 O.S.Supp.1992, Ch. 1, App. 1–A, Rule 1.1 (emphasis added). Jurisdiction to conduct this proceeding properly rests with this Court.

■ In bar disciplinary matters, this Court exercises exclusive original jurisdiction as a licensing court. *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 810 P.2d 826, 830 (Okla.1991). The ultimate responsibility for deciding whether misconduct has occurred and what discipline is appropriate lies with this Court. *Id.* at 830–31. Therefore, our review is *de novo* in considering the record presented to, and the recommendation of the trial panel. *Id.* at 831. Accordingly, we shall examine the evidence of each of the three counts of professional misconduct alleged in the present case.[1]

## COUNT I

On January 31, 1986, respondent was employed by Kelly Benson to represent her for injuries sustained in an automobile accident. Pursuant to a contingent fee agreement, respondent was to receive one-third of any settlement. Following his suspension, respondent continued to represent himself as a licensed attorney to Benson, members of her family and to the insurance company who insured the defendant in Benson's personal injury matter. Respondent claimed that he sent Benson a

letter in February of 1991 to inform Benson that he could no longer represent her or negotiate any settlement on her behalf. However, according to respondent, the letter was returned undelivered. Although respondent sent a similar letter to Benson in June of 1991, he continued to negotiate a settlement with the defendant's insurance company. Respondent never notified any of the parties that his license to practice law had been suspended and that he could not negotiate a settlement on Benson's behalf. Furthermore, Benson testified that respondent's various communications with her step-uncle concerning her case were not authorized.

After several months of negotiating on Benson's behalf, respondent succeeded in obtaining an increased settlement offer for her. The OBA alleged that respondent continued to maintain an attorney trust account and, when the settlement check was received, deposited the same in his trust account and sent a settlement check to Kelly Benson. Benson verified that a check written on respondent's trust account was sent to her, along with a settlement check that she was asked to endorse. Respondent does not *per se* deny the facts alleged in this count, but professes that he did not think his actions in this regard constituted the unauthorized practice of law. He also claims that Benson specifically gave him permission to discuss her case with her step-uncle.

## COUNT II

The OBA alleged that, following his suspension, respondent caused his name to be placed or remain in the business pages of the Southwestern Bell telephone book for the Tulsa area. A representative of Southwestern Bell testified that respondent's business listing was adjusted to delete a reference to "attorney" in 1992. However,

---

1. During the course of its investigation of respondent, the OBA deposed respondent. The deposition was not introduced during the disciplinary hearing and respondent's subsequent motion to reopen the hearing to admit the deposition was denied by the trial panel. Respondent now asks that this cause be remanded to the trial panel for the purpose of admitting his deposition into evidence or, in the alternative, that this Court admit and consider the deposition at this time. Respondent's deposition was accepted for filing by the Clerk of this Court on March 15, 1993. We have considered the deposition in rendering this Opinion.

she stated that company records for 1991 were not available to determine whether respondent requested that such adjustment be made that year.

## COUNT III

Prior to his suspension, respondent was acting as defense counsel for Sears Roebuck and Company in a matter involving an alleged personal injury suffered by Floyd Smith. On February 1, 1991, respondent wrote a letter to Sears indicating that he was "no longer practicing" law and suggesting replacement counsel in the Smith case. However, in a letter to Sears' senior legal counsel dated April 5, 1991, respondent indicated that he was still practicing law and actively handling the Smith case. Respondent apologized for missing two phone calls, but explained that the calls "came at a time when [he] was in court." Respondent stated that he had "elected to move [his] office to join [another attorney's] firm" and he inquired as to whether Sears approved of the suggestion that the new attorney "work with us" in handling respondent's remaining cases with Sears. After discussing some problems with the case, respondent wrote that he would keep Sears advised.

Respondent did not file a motion with the court to withdraw as counsel from the Smith case. He then failed to appear at a scheduled pre-trial conference on behalf of Sears after advising Sears that he would do so and with knowledge that his license was suspended at the time of said conference. He also failed to appear at a later hearing which resulted in the entry of a $250,000.00 default judgment against Sears. Finally, respondent concealed from Sears the fact that the default judgment had been taken. The senior legal counsel for Sears testified that after he learned of the default judgment, he asked respondent if he had any problems with the state bar. According to the senior counsel, respondent first avoided the question and then denied any such problem. At no time did respondent advise Sears that his license to practice law had been suspended. Respondent admitted that he never filed a motion to withdraw

from the Smith case and that he never informed Sears that he had been suspended. However, he denied allegations that he continued to represent Sears after his suspension.

## DISCUSSION

The OBA asserts that the conduct of respondent alleged in Count I violated the mandatory provisions of Rule 9.1 of the *Rules Governing Disciplinary Proceedings*, 5 O.S.1991, Ch. 1, App. 1–A, and Rules 1.6 and 5.5 of the *Rules of Professional Conduct*, 5 O.S.1991, Ch. 1, App. 3–A. Disciplinary Proceeding Rule 9.1 provides in relevant part:

> When the action of the Supreme Court becomes final, a lawyer who is disbarred or suspended ... must notify all of the lawyer's clients having legal business then pending within twenty (20) days, by certified mail, of the lawyer's inability to represent them and the necessity for promptly retaining new counsel.... The lawyer shall also file a formal withdrawal as counsel in all cases pending in any tribunal.

Omitting exceptions not relevant here, Professional Conduct Rule 1.6 states:

> (a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation....

Finally, Professional Conduct Rule 5.5(a) provides that "A lawyer shall not ... practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction...."

■■■■ The trial panel found that the OBA failed to prove that respondent continued to maintain an attorney trust account or that his actions violated Professional Conduct Rule 1.6. However, the panel ruled that all other allegations had been established by clear and convincing evidence. *See* Rule 6.12 of the *Rules Governing Disciplinary Proceedings*, which mandates that charges of professional misconduct must be established by clear and con-

vincing evidence. We agree with the findings of the trial panel. The evidence establishes that respondent did not notify Benson, by certified mail, of his inability to practice law after his suspension and that he continued to practice law by representing Benson in settlement negotiations. Evidence regarding whether respondent received permission to correspond with Benson's step-uncle has not been established by clear and convincing evidence.

In Count II, the OBA claims that respondent's conduct in allegedly maintaining an "attorney" business listing in the telephone book violated Rule 9.1 of the *Rules Governing Disciplinary Proceedings* and Rule 5.5 of the *Rules of Professional Conduct.* The trial panel found that these allegations were not established by clear and convincing evidence. We agree. The OBA was unable to present evidence that respondent did not attempt to withdraw the business listing at the first available time during his initial year of suspension.

The OBA charges that the conduct alleged in Count III violated Rule 9.1 of the *Rules Governing Disciplinary Proceedings* and Rules 8.4, 5.5, 1.1, 1.3 and 1.4 of the *Rules of Professional Conduct.* Disciplinary Proceeding Rule 9.1 and Professional Conduct Rule 5.5 have previously been set forth. Professional Conduct Rule 8.4 provides in relevant part that it is professional misconduct for a lawyer to:

    (a) violate or attempt to violate the Rules of Professional Conduct ...;

    (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]

    (d) engage in conduct that is prejudicial to the administration of justice....

Professional Conduct Rule 1.1 states that "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Professional Conduct Rule 1.3 provides that "A lawyer shall act with reasonable diligence and promptness in representing a client." Finally, Professional Conduct Rule 1.4 sets forth:

    (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

    (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The trial panel found that all of the allegations in Count III were established by clear and convincing evidence and that such conduct violated all but Rule 1.1 of the alleged rule violations. Again, we adopt the findings of the trial panel. The evidence shows that respondent did not advise Sears, by certified mail, of his inability to practice law. He engaged in conduct involving dishonesty, deceit or misrepresentation by either deceiving Sears into believing, or relying on Sears' misconception, that he was still able to practice law. When confronted by a Sears representative several months after his suspension, respondent lied about his status in the OBA. Respondent's actions regarding the Smith case also constituted the unauthorized practice of law. By failing to file a motion to withdraw from the case, respondent engaged in conduct prejudicial to the administration of justice. He failed to act with reasonable diligence and promptness in representing Sears and he failed keep Sears reasonably informed about the status of the case.

We find that the OBA has established by clear and convincing evidence that respondent violated the *Rules Governing Disciplinary Proceedings* and the *Rules of Professional Conduct,* and conclude that such misconduct warrants disciplinary action. We further find that on the basis of the facts of this case, coupled with respondent's prior misconduct, disbarment is the appropriate sanction. Respondent's prior acts of professional misconduct, as set forth and stipulated to in *State ex rel. Oklahoma Bar Ass'n v. Downing,* 804 P.2d 1120 (Okla.1990), consisted of neglect of a legal matter, failure to communicate with clients and refusal to respond to their inquiries, misrepresentation to a court,

**1116**

commingling and misapplying funds, engaging in conduct injurious to his client, and failure to cooperate with the OBA.

■ We are not persuaded by respondent's plea that a four year suspension is punishment enough for his actions. This Court cannot, and will not, tolerate utter disregard for our orders of suspension. Respondent's actions during his period of suspension demonstrate such disregard and evince his unfitness to practice law. It is clear that no other sanction will serve to protect the paramount interest of preserving public confidence in the bar. *See State ex rel. Oklahoma Bar Ass'n v. Todd*, 833 P.2d 260, 267 (Okla.1992).

The OBA has submitted an itemized Application to Assess Costs in the amount of $3,623.71. We hold respondent liable for the costs of this disciplinary proceeding.

IT IS THEREFORE THE ORDER OF THIS COURT that respondent be disbarred from the practice of law in the State of Oklahoma and that his name be stricken from the roll of attorneys.

IT IS FURTHER ORDERED that respondent pay the costs of this proceeding in the amount of $3,623.71 within thirty days from the date this Opinion becomes final.

HODGES, C.J., disqualified.

LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.