**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Darril L. HOLDEN, Respondent.**

**No. 4153.**

Supreme Court of Oklahoma.

July 16, 1996.

5. *See State ex rel. Oklahoma Bar Ass'n v. Busch,* 919 P.2d 1114 (Okla.1996).

Janis Hubbard, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Complainant.

James C. Cox, Oklahoma City, for Respondent.

KAUGER, Vice Chief Justice:

The complainant, Oklahoma Bar Association (Bar Association), charged the respondent, Darril L. Holden (Holden/attorney), with three counts of misconduct. All three counts related to the attorney's unauthorized practice of law while under a disciplinary suspension [1] and to his dishonesty in responding to grievance inquiries. The attorney admitted his misconduct. We find that this conduct—involving, in part, a blatant disregard of this Court's prior order of suspension—warrants a two year and one day suspension and the payment of costs in the amount of $235.43.[2]

---

**1.** The conduct complained of is a violation of Rules 1.1 and 8.4(a)(c) and (d), Rules of Professional Conduct, 5 O.S.1991, Ch. 1, App. 3–A, and Rule 1.3, 5 O.S.1991, Ch. 1, App. 1–A. Rule 1.1 provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."

Rule 8.4 provides in pertinent part:

"It is professional misconduct for a lawyer to: ... (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice ... "

Rule l.3 provides:

"The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or a misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

**2.** Rule 6.13, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:

"Within thirty (30) days after the conclusion of the hearing, the Trial Panel shall file with the Clerk of the Supreme Court a written report which shall contain the Trial Panel's findings of fact on all pertinent issues and conclusions of law (including a recommendation as to discipline, if such is found to be indicated, and a recommendation as to whether the costs of the investigation, record and proceedings should be imposed on the respondent), and shall be accompanied by all pleadings, a transcript of the proceeding, and all exhibits offered thereat...."

Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:

"The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall

## AGREED FACTS

In *State ex rel. Oklahoma Bar Ass'n v. Holden*, 895 P.2d 707, 713 (Okla.1995) (*Holden I* ), promulgated on March 21, 1995, Holden was given a one year suspension for advising a client to remove his child from Oklahoma in violation of a court order. In February of this year, the Bar Association filed an objection to reinstatement of the attorney based in part upon his failure to pay costs of the prior disciplinary proceeding. The objection also indicated that Holden may have engaged in the unauthorized practice of law while on suspension. On March 11, 1996, Holden was ordered to show cause why his suspension should not be extended pending payment of the ordered costs. The attorney filed a response containing exhibits establishing that the required costs were paid. On April 9, 1996, we issued an order dismissing the Bar Association's objection to reinstate-

ment or request for continued suspension based upon the failure to pay costs as moot.[3] The dismissal order advised the Bar Association and Holden that a separate disciplinary complaint could be filed alleging that the attorney engaged in the unauthorized practice of law during the period of suspension or that he committed other actions which would subject him to discipline.[4]

On May 3, 1996, the Bar Association, the attorney and the trial panel filed their proposed findings of facts, conclusions of law, and recommendation of discipline (agreed findings). The agreed findings outline three cases in which Holden accepted representation of clients while he was under suspension for unprofessional conduct.[5] This Court's order of suspension in *Holden I* was promulgated on March 21, 1995. As early as the first week of April, 1995, Holden agreed to

be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

**3.** On March 19, 1996, the Bar Association filed an application to consolidate this cause with its prior request to continue Holden's suspension. That cause, SCBD # 3962, was disposed of with the order issued on April 9, 1996. Although this cause involves some of the same allegations as those made in the Bar Association's request for continued suspension, the Court's order of April 9, 1996, requires that a "separate disciplinary complaint" be filed. *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 794 P.2d 397, 399 (Okla.1989) [When reinstatement petition is opposed because of conduct of the applicant, general counsel should then file a formal complaint against the applicant if general counsel intends that the conduct is to be used for imposition of additional discipline.] See discussion, p. 34, infra, and Order of April 9, 1996, providing in pertinent part:

"... THE COURT FINDS:
1) The Bar Association's objection to reinstatement or request for continued suspension of the respondent based primarily upon his failure to pay costs is dismissed as moot.
2) This Court finds no impediment to bar proceedings under Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A for respondent's reinstatement.
3) The Bar Association and the attorney are advised that a separate disciplinary complaint may be filed with the Professional

Responsibility Commission alleging that the attorney engaged in the unauthorized practice of law during the period of suspension or that he committed other actions which would subject him to discipline. Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A. . . ."

**4.** See note 3, supra, and related discussion. Rule 11.8, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides:

"A lawyer who has been suspended for two (2) years or less upon disciplinary charges may resume practice upon the expiration of the period of suspension by filing with the Clerk of the Supreme Court an original and two (2) copies of an affidavit affirming that affiant has not engaged in the unauthorized practice of law or otherwise violated the rules of the Association or the terms of the affiant's order of suspension. The affidavit shall also describe all business or professional activities of the affiant and places of residence during the term of the suspension. No order of Court is necessary; however, material deletions or misrepresentations in the affidavit shall be grounds for subsequent discipline.
A copy of the affidavit shall be served on the General Counsel by the lawyer at the time of its filing, who may within sixty days file a separate disciplinary complaint with the Professional Responsibility Commission stating the lawyer during the suspension engaged in the unauthorized practice of law or other actions which would render the lawyer subject to discipline."

**5.** *State ex rel. Oklahoma Bar Ass'n v. Holden*, 895 P.2d 707, 713 (Okla.1995) (*Holden I* ).

represent Fran Lisenberry in a dispute involving back taxes and a delinquent mortgage. On June 5, 1995, Richard and Beverly Grinrod hired him to represent them in a personal bankruptcy action. Beginning on June 21 and continuing through July 6, 1995, Holden gave legal advice to Gail Lewis and Diane Johnson involving a juvenile matter and a specialized school placement. The clients in all three matters first learned of Holden's suspended status when they complained about his performance to the Bar Association. When the Bar Association contacted Holden concerning each of the three complaints, he initially responded that: 1) he had disclosed his suspended status to the respective clients; 2) the clients had actually hired his son, an attorney of the same name, to represent them; and 3) he had not engaged in the unauthorized practice of law during his suspension. *Each of these responses were admitted misrepresentations.*

**6.** Rule 6.13, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 2, supra; Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 2, supra.

**7.** Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A provides in pertinent part:
"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings."
*State ex rel. Oklahoma Bar Ass'n v. Farrant,* 867 P.2d 1279, 1281 (Okla.1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* 810 P.2d 826, 830 (Okla.1991); *State ex rel. Oklahoma Bar Ass'n v. Braswell,* 663 P.2d 1228, 1232 (Okla.1983).

**8.** Holden was the only witness called at the hearing on April 18, 1996, before the trial panel. His testimony provides in pertinent part:
p. 6 "... Q. Do you agree that by giving Ms. Fran Lisenberry, and that's, for the record, L-i-s-e-n-b-e-r-r-y, do you agree that by giving her legal advice that she could falsely believe that you were not suspended?
A. Yes, I do....
Q. Okay. Paragraphs 9 and 10 then would be reflected in the Exhibits 3 and 4 as far as who she believed was her attorney and when she was first informed that you were suspended ...
A. That is...."
p. 7 "Q ....—do you recognize that as being the grievance from Richard and Beverly Grinrod?
A. Yes, I do.

The Bar Association, the attorney and the trial panel have recommended a one year suspension. The Bar Association has also requested that costs be assessed.[6]

## THE UNAUTHORIZED PRACTICE OF LAW WHILE UNDER A DISCIPLINARY SUSPENSION COUPLED WITH MISREPRESENTATIONS MADE IN RESPONSE TO A GRIEVANCE INQUIRY WARRANT A TWO YEAR AND ONE DAY SUSPENSION AND THE IMPOSITION OF COSTS

Before this Court may impose discipline upon an attorney, the charges must be established by clear and convincing evidence.[7] The record is sufficient to support the charges of the unauthorized practice of law and of misrepresentations made to the Bar Association in response to its grievance inquires.[8]

Q. And do you agree that you met with them at your—at the offices at 1420 Linwood Boulevard?
A. I did.
Q. And that you discussed facts and circumstances surrounding the possible bankruptcy filings?
A. Yes.
Q. And that included giving legal advice?
A. Yes...."
p. 10 "Q.... Do you remember meeting with Gail Lewis and her sister at the offices at 1420 on Linwood Boulevard?
A. Yes, I do.
Q. And do you remember discussing facts and circumstances surrounding Ms. Lewis' son's case?
A. I do.
Q. And giving legal advice?
A. Yes, I do...."
pp. 15–16 "... MS. FEAVER: Okay. But prior to the filing of the answer and during the investigation when you, Mr. Holden, responded to each of the letters from the investigator for the Bar, you denied the allegations recited in each of those letters, did you not?
THE WITNESS: Yes, ma'am.
MS. FEAVER: And did you know at the time that your denial was a misrepresentation?
THE WITNESS: No, ma'am, and listen, the reason being is because just the facts of the case, at least of the circumstances, is that at the time—I'm under a different impression now, but at the time, I was under the impression at the time that I dealt with these people that the things I was doing, was absolutely nothing wrong, and since that time, with discussions with Ms. Hubbard and with reading

In disciplinary matters, this Court possesses exclusive original jurisdiction.[9] We are not bound by agreed findings, conclusions of law or recommendations for discipline.[10] Rather, the ultimate responsibility for imposition of professional discipline is ours alone.[11] Our review is *de novo* in considering the record presented as well as the recommendations for discipline.[12]

This is the third time that this Court has been called upon to consider the attorney's conduct in a disciplinary context. In the first two instances, Holden was treated with leniency. Despite the severity of the charge,[13] we reduced the recommended discipline in *State ex rel. Oklahoma Bar Ass'n v. Holden,* 895 P.2d 707, 713 (Okla.1995) (*Holden I*) from eighteen months to one year in consideration of testimony presented concerning the attorney's honesty and good character. *Holden I* was promulgated on March 21, 1995. It required that the attorney pay costs within thirty days of the date of the opinion as a precondition to reinstatement. The or-

dered costs were not paid until March 19, 1996—almost a year after they were due and only after we issued a show cause order. Nevertheless, our order of April 9, 1996,[14] dismissed as moot the Bar Association's request for Holden's continued suspension based upon his failure to pay costs as ordered in *Holden I.*

Discipline is administered to preserve public confidence in the bar.[15] Our responsibility in a disciplinary proceeding is not to punish but to inquire into and to gauge a lawyer's continued fitness to practice law, with a view to safeguarding the interest of the public, of the courts and of the legal profession.[16] Discipline is imposed to maintain these goals rather than as punishment for the lawyer's misconduct.[17] Disciplinary action is also administered to deter the attorney from similar future conduct and to act as a restraining vehicle on others who might consider committing similar acts.[18] This Court cannot, and will not, tolerate utter disregard for our orders of suspension.[19] To

the case law and such, that I can see that the things that I've done could certainly mislead people into believing that—that I was an attorney, that I had the rights to do the things that I did...."

9. Rule 1.1, Rules Governing Disciplinary Proceedings, 5. O.S. Supp.1992, Ch. 1, App 1–A, provides in pertinent part:

"This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in this State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma, hereinafter referred to as lawyers and any other persons, corporations, partnerships, or any other entitles (hereinafter collectively referred to as 'persons') engaged in the unauthorized practice of law...."
*State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 7, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* see note 7, supra; *State ex rel. Oklahoma Bar Ass'n v. McMillian,* 770 P.2d 892, 894 (Okla.1989).

10. *State ex rel. Oklahoma Bar Ass'n v. Leigh,* 914 P.2d 661, 667 (Okla.1996); *State ex rel. Oklahoma Bar Ass'n v. Butler,* 848 P.2d 540, 542 (Okla. 1992).

11. *State ex rel. Oklahoma Bar Ass'n v. Braswell,* see note 7 at 1230, supra; *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262, 265–66 (Okla. 1982).

12. *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 7 at 1284, supra; *State ex rel. Oklahoma Bar Ass'n v. Gasaway,* see note 7 at 830–31, supra; *State ex rel. Oklahoma Bar Ass'n v. Stubblefield,* 766 P.2d 979, 982 (Okla.1988).

13. *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 5, supra [Attorney misconduct related to the parent-child relationship is a serious matter.].

14. See note 3, supra.

15. *State ex rel. Oklahoma Bar Ass'n v. Downing,* 863 P.2d 1111, 1116 (Okla.1993).

16. *State ex rel. Oklahoma Bar Ass'n v. Donnelly,* 848 P.2d 543, 545 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. Colston,* 777 P.2d 920, 925 (Okla.1989); *State ex rel. Oklahoma Bar Ass'n v. Moss,* 682 P.2d 205, 207 (Okla.1983).

17. *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 7 at 1286, supra; *State ex rel. Oklahoma Bar Ass'n v. Johnston,* 863 P.2d 1136, 1144–45 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Raskin,* 642 P.2d 262, 267 (Okla.1982).

18. *State ex rel. Oklahoma Bar Ass'n v. Todd,* 833 P.2d 260, 267 (Okla.1992); *State ex rel. Oklahoma Bar Ass'n v. McMillian,* 770 P.2d 892, 899 (Okla.1989).

19. *State ex rel. Oklahoma Bar Ass'n v. Downing,* see note 15, supra.

do so would require us to ignore our paramount duty of preserving public confidence in the entire bar.[20]

■ The parties and the trial panel stipulated to a one year suspension as sufficient discipline for Holden's actions. We disagree. Here, the attorney disregarded our order of suspension almost from the time it issued, and he engaged in the unauthorized practice of law. Furthermore, he misrepresented his actions in his response to the grievance inquiries of the Bar Association—an action which, in itself, may subject an attorney to discipline.[21] If we were to agree to anything less than a two year and one day suspension, Holden's readmission to the practice of law could be made without an order of this Court.[22] When the attorney was given the opportunity for readmission to the practice of law without order of this Court and with only the requirement that he file with the Clerk of the Supreme Court an affidavit affirming that he had not engaged in the unauthorized practice of law or violated any other disciplinary rule or the disciplinary order of this

Court entered in *Holden I,* he abused it by ignoring the discipline administered and engaging in the unauthorized practice of law. We find that he must meet a more strict standard before being allowed to represent the public in the future. Therefore, Holden is suspended from the practice of law for two years and a day.

A suspension from the practice of law for a period of two years and one day is tantamount to disbarment in that the suspended lawyer must follow the same procedures for readmittance as would a disbarred counterpart.[23] Before an attorney who has been disciplined for more than two years may be readmitted to the practice of law, it must be established that his/her conduct will conform to the high standards required of a member of the Oklahoma Bar. The applicant must present stronger proof of qualifications than one seeking first time admission.[24]

The Bar Association submitted an application to assess costs of $235.43 on June 25, 1996. The costs are itemized and copies of the bills associated with the proceeding are

**20.** *State ex rel. Oklahoma Bar Ass'n v. Evans,* 747 P.2d 277, 280, 85 A.L.R.4th 557 (Okla.1987).

**21.** Rule 5.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App 1–A provides in pertinent part:

"After making such preliminary investigation as the General Counsel may deem appropriate the General Counsel shall ... file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline...."

**22.** Rule 11.8, Rules Governing Disciplinary Proceedings, see note 4, supra.

**23.** Rule 11.1, 5 O.S.1991, Ch. 1, App.1–A, Rules of Disciplinary Proceedings, provides in pertinent part:

"A person whose name has been stricken from the Roll of Attorneys for non-payment of dues, or who has been suspended from the practice of law for a period of longer than two (2) years or disbarred, or who has resigned membership

in the Association, may be readmitted to the practice of law only through the following procedures ..."

**24.** Rule 11.4, 5 O.S.1991, Ch. 1, App. 1–A, Rules of Disciplinary Proceedings, provides:

"An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules."
*Matter of Reinstatement of Wright,* 907 P.2d 1060, 1062 (Okla.1995); *Matter of Reinstatement of Moss,* 848 P.2d 564 (Okla.1993).

attached to the Bar Association's application. Holden has not filed a response to the application. He is responsible for the costs of the disciplinary proceeding.[25]

## CONCLUSION

The nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law is solely vested in this Court.[26] Upon a *de novo* review of the record, we find that Holden engaged in the unauthorized practice of law while under a disciplinary order of suspension issued by this Court. He also misrepresented his actions to the Bar Association in response to its grievance inquiry.

We are deeply concerned at the repeated appearance of this attorney before this Court on disciplinary matters. Holden's initial advice to a client to remove his child from Oklahoma in violation of a court order,[27] followed by his failure to pay promptly costs of the disciplinary proceeding and his unauthorized practice of law while under suspension demonstrate an indifference to his obligations as a member of the Oklahoma Bar Association.[28] The conduct warrants a two year and one day suspension and the payment of costs in the amount of $235.43. Costs are to be paid within thirty days of the date of this opinion.

**RESPONDENT SUSPENDED; COSTS IMPOSED.**

HODGES, LAVENDER, HARGRAVE, SUMMERS and WATT, JJ., concur.

ALMA WILSON, C.J., concurs in part and dissents in part.

SIMMS, Justice, dissenting:

In view of respondent's continued misconduct, I would order respondent disbarred.

OPALA, J., dissents.

OPALA, Justice, dissenting from today's sanction of suspension.

The court holds today that a lawyer who blatantly disregards its earlier order (barring him from practicing law for one year) should be suspended for two years and one day. A legal practitioner who flagrantly disobeys this court's imposition of professional discipline deserves nothing less than disbarment.[1]

The lenient sanction visited on this offender today borders on a total loss of touch with reality. By *merely suspending* Holden for his defiance of an earlier suspension order, one mistake is piled upon another. Holden doubtlessly mistook the mild discipline given him for the earlier offense for weakness in the disciplinary regime's enforcement and for this court's lack of resolve to carry out its nondelegable constitutional responsibility to police the profession. There is *no* assurance he will find *this suspension* any more daunting than he did previously.[2]

25. Rule 6.16, Rules of Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, see note 2, supra.

26. *State ex rel. Oklahoma Bar Ass'n v. Farrant,* see note 7 at 1287, supra; *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049, 1052 (Okla.1981).

27. *State ex rel. Oklahoma Bar Ass'n v. Holden,* see note 5, supra.

28. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. *State ex rel. Oklahoma Bar Ass'n v. Brown,* 863 P.2d 1108, 1111 (Okla.1993); *State ex rel. Oklahoma Bar Ass'n v. Colston,* 777 P.2d 920, 924 (Okla.1989).

1. Unauthorized (pre-reinstatement) practice of law has been employed as a legitimate ground for prolonging the offender's status of ineligibility for readmission. *State ex rel. Oklahoma Bar Ass'n v. Samara,* Okl., 725 P.2d 306 (1986). My counsel today, if accepted by the court, would make this offender ineligible for reinstatement for at least three years longer than the court's adopted solution. *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* Okl., 919 P.2d 427 (1996) (Opala, J., dissenting).

2. Holden was given a one-year suspension on March 21, 1995 for advising a client to remove his child from Oklahoma in violation of a court order. *See State ex rel. Oklahoma Bar Ass'n v. Holden,* Okl., 895 P.2d 707 (1995). Less than a month later (in the first week of April 1995) he gave legal advice to Fran Lisenberry in violation of that disciplinary order. Tr. transcript p. 5.

I would direct that this *repeat offender*[3] be disbarred.

---

**3.** For a fuller explanation of my views about dealing with *repeat* bar offenders, see *Wolfe, su-* pra note 1 at 437–439.