OPALA, J.,
dissenting in part.
T1 I concur in visiting discipline on the respondent, but dissent from the lenient sanction imposed, which is disproportionate to the gravity of the misconduct underlying his earlier disbarment by the United States Court of Appeals for the Tenth Circuit (Tenth Cireuit). It also ignores respondent's failure to give a clear and comprehensible exculpatory account of that conduct. I would instead suspend respondent's legal I-cense for a period of two years and one day.
T2 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. When a legal practitioner acts outside the bounds of permissible professional conduct, this court must hold a thorough examination into his (or her) continued fitness to practice law.[1] Today's per curiam opinion retreats from the exhaustive scrutiny of respondent's conduct prescribed by this court's prior decisions. Had the requisite examination been performed, it would have led to the inescapable conclusion-that respondent has demonstrated a lack of fitness to practice law.
I
INTRODUCTION TO THE RECORD
13 Rule 7.7(a) of the Rules Governing Disciplinary Proceedings requires a lawyer who has been disciplined in another jurisdiction to inform the General Counsel of the Oklahoma Bar Association of that fact.[2] Respondent was twice disciplined by the Tenth Circuit and both times failed to provide the required notification. Respondent claims that he was unaware of his obligation to *562 notify the Bar of foreign-imposed discipline. The trial panel members, who saw and heard respondent, found this explanation credible. Nothing in the record conflicts with this finding and I concur. Ignorance of a disciplinary rule is not a complete defense to a lawyer's failure to comply with that rule, but where there is an absence of a deceitful motive, it may be considered as a mitigating factor.[3]
1 4 Disciplinary sanctions not only serve to deter the offending lawyer from committing similar acts in the future, but also operate to put other practitioners on notice that departures from ethical norms will not be tolerated.[4] Respondent's ignorance of his duty to notify the Bar of having been disciplined by another jurisdiction suggests that the obligation imposed by the reciprocal disciplinary rule may not be widely known by legal practitioners. Hence, were this respondent's only offense, I would nevertheless advocate a public reprimand for it alone. I would do so not to punish or embarrass respondent, but in order to put other practitioners on notice of their duty to notify the Bar of discipline imposed by another jurisdiction.
T5 Violation of the notice provision contained in the reciprocal disciplinary rule is not the sole episode of professional misconduct committed by respondent and public censure is hence not sufficient to vindicate the interests we are bound to protect. The gravamen of this case is that respondent practiced law in the Tenth Circuit while subject to an order of suspension and then ignored that court's order to explain his actions. We have on more than one occasion put members of the Bar on notice that this court will not tolerate disregard of our orders of suspension.[5] Today's disposition puts lawyers on notice of a different sort-that we will tolerate, or at least not seriously discipline, disregard of another jurisdiction's orders of suspension.
T6 A reciprocal disciplinary proceeding is not a retrial of the facts that resulted in respondent's disbarment. The Tenth Circuit's disbarment order stands as prima facie evidence that respondent practiced law while under suspension and that he failed to respond to the court's show cause order.[6] Today's inquiry is limited to issues relevant to the appropriate discipline in this jurisdiction for his adjudicated misconduct. A respondent is given the opportunity under Rule 7.7(b) of the Rules Governing Disciplinary Proceedings to provide this court with explanatory and mitigating information which demonstrates that the other jurisdiction's disciplinary sanction was not commensurate with his misconduct and should not be duplicated by this court.[7] The per curiam opinion apparently concludes that respondent has successfully borne this burden, for not only has the court determined that disbarment is too severe a disciplinary sanction, but that even a mild suspension would be excessive. My own analysis of the record, which is set forth below, fails to discern support for the court's indulgent view of respondent's conduct or for the lenient sanction the court has crafted.
*563 II
THE CHARGES AGAINST RESPONDENT
A.
The Conduct that Resulted in Respondent's Suspension: 1993-1994
17 In the fall of 1992, respondent was retained by Lloyd Michael Reid to defend him against criminal charges filed in the United States District Court for the Northern District of Oklahoma. Pursuant to a plea bargain, Reid pled guilty and was sentenced to two consecutive five-year terms in prison. Between the date he entered his plea and the date of his sentencing, Reid apparently became convinced that the plea agreement had not been in his best interest and expressed to respondent his desire to appeal his sentence. Respondent complied with Reid's wishes by filing a notice of intent to appeal. Finding himself in the position of representing a client who was appealing a plea bargain he had arranged, respondent also filed an application in the Tenth Circuit to withdraw as Reid's attorney. The application gave no reason for respondent's request to withdraw. It was denied without prejudice.
T8 Respondent went on to file some but not all of the initial documents that would perfect Reid's appeal. The omission of a necessary document caused the Tenth Circuit on 10 May 1998 to issue an order to respondent to show cause why he should not be disciplined for failure to prosecute Reid's appeal. Respondent immediately sent a letter dated 19 May apologizing for his untimely handling of the case. In the letter, respondent informed the court that the effectiveness of his representation below would be an issue on appeal, but then, instead of renewing his request to withdraw, respondent proceeded to defend the plea bargain he had struck for Reid. He concluded the letter by assuring the court that the situation would not repeat itself. He then filed the document that had precipitated the court's disciplinary process.
19 On 4 June 1998, the Tenth Circuit discharged the show-cause order, appointed respondent to handle Reid's appeal, and set a due date for appellant's brief. Approximately three weeks later, respondent received a letter from Reid accusing him of gross acts of impropriety in the handling of his case. Respondent states that he was unnerved by what he perceived as the threatening tone of this letter. Nevertheless, respondent filed nothing further in the federal appellate court seeking to obtain permission to withdraw. Respondent did not file a brief for Reid, and on 20 August, the Tenth Cireuit removed respondent from the case for failure to prosecute the appeal.
{ 10 In January 1998, respondent was appointed by the United States District Court for the Northern District of Oklahoma to represent another criminal defendant, David Kirkland Deanovich,. Deanovich, too, agreed to a plea bargain negotiated by respondent. Like Reid, Deanovich decided to appeal the negotiated plea and informed respondent that he wanted other counsel to handle his case. To preserve his client's right to appeal, respondent filed a notice of intent to appeal and, in response to Deanovich's desire to have other counsel, respondent filed an application in the District Court to withdraw as Deanovich's attorney. The District Court denied respondent's request.
T11 Respondent proceeded to file all the preliminary paperwork necessary to perfect the appeal, but never filed a brief on appellant's behalf. On 16 August 1998 the federal appellate court removed respondent as Deanovich's counsel, Nothing appears in the record before this court indicating that respondent's concerns about continuing to represent Deanovich were ever communicated to the Tenth Circowit or that he ever moved in the Tenth Cirowt for permission to withdraw.
112 On 1 September 1998, the Tenth Circuit ordered respondent to show cause why he should not be disciplined for failure to prosecute the Reid and Deanovich appeals. Within the time prescribed, respondent requested additional time to answer the charges, but never thereafter submitted any response. On 2 February 1994, the Tenth *564 Circuit suspended respondent from the practice of law.
B.
The Conduct that Resulted in Respondent's Disbarment: 1997
13 In February of 1997, respondent defended a tax protester named Ralph Bailey in a revocation hearing before the United States District Court for the Northern District of Oklahoma. Bailey's probation was revoked for one month, a decision Bailey desired to appeal. Because his 1998 suspension was still in effect, respondent informed Bailey that he could not represent him before the federal appellate court. Bailey was unwilling to retain other counsel and filed pro se a notice of intent to appeal. Respondent states in his affidavit that he did not prepare or sign the notice of intent to appeal, but did sign the attached certificate of service as "server."
114 Shortly thereafter, respondent received a letter from the Tenth Cireuit Court Clerk's office dated 18 March 1997. It was addressed jointly to him and Bailey and the greeting stated "Dear Counsel." The letter contained instructions for attorneys on filing an entry of appearance and provided the schedule for filing documents to perfect the appeal. Because he did not draft, sign, or file Bailey's notice of intent to appeal, respondent did not consider himself Bailey's attorney and testified that he "took no action pursuant to this letter."
15 Respondent then recalls in his testimony that:
"... they wrote me another letter in ten or fourteen days saying if you don't respond, Dr. Bailey's appeal could be dismissed and so I thought, well, I can't let Dr. Bailey's appeal be dismissed and so I proceeded to perfect the necessary documents that would position Dr. Bailey to be able to subsequently brief his appeal."
Respondent appears to be referring here to the filing of the initial appeal documents, which were due by 24 March. Receipt of a letter on or about 24 March directing respondent to proceed with Bailey's appeal or risk dismissal would explain the pressure respondent testified he felt he was under to get the necessary documents on file even though he knew he had not complied with, or perhaps at this stage even inquired about, the reinstatement procedure. The preliminary appeal documents were filed by 28 March.
'I 16 Yet, the record contains no letter from the clerk's office corresponding to the date respondent says he received this second letter[8] and he does not even mention it in his affidavit or reply brief. In fact, both of those documents jump from the 18 March letter, in response to which respondent says he took no action, to a letter dated 14 April, in response to which he says he "proceeded with Bailey's appeal process." In his reply brief, respondent states that it was his compliance "with the directive in the letter of April 14, 1997" that caused him to engage in the unauthorized practice of law. Additionally, in his affidavit he states that when he was told by the Tenth Circuit Court Clerk's office that he was in trouble for handling the Bailey appeal while under a suspension, he pointed out that he "was acting under the directives of the April 14, 1997, letter." It is impossible to reconcile these statements with the statement quoted earlier indicating that respondent filed the initial appeal documents in March unless respondent does not consider the filing of those documents to be part of the practice of law. Moreover, if these statements are correct, it would mean that the first documents respondent filed in the Bailey case were his entry of appearance and Bailey's appellate brief, both of which were filed on 14 May. That would have given respondent a month from the date of the 14 April letter to inquire about reinstatement and take whatever action was necessary in order to be reinstated before the brief was due on 14 May. The time pressure and the need to conform to a directive from the court would be far less than they would have been in relation to filing of the documents on 28 *565 March. These conflicting statements, together with the absence from the record of a letter from the clerk's office bearing a date cirea 24 March, weaken respondent's attempt to explain his misconduct as a response to the directives he claims to have received from the clerk's office.
17 Respondent's account of his contacts with the clerk's office regarding reinstatement are equally imprecise. Respondent asserts that he resumed practising law in the federal appellate court under the mistaken impression that reinstatement was merely a formality that did not have to precede the resumption of practice. Respondent testified that he discussed reinstatement with a member of the clerk's office at least three times and perhaps as many as five times, but the record recounts the contents of only two calls, neither of which took place prior to the date on which the initial appeal documents were filed.
118 The first phone call respondent de-seribes took place more or less contemporaneously with his receipt of the letter of 14 April. Of that phone call respondent says in his affidavit, "I called the Tenth Circuit Court Clerk and was told I would be sent a 3x5 readmission card to be allowed to once again practice...." In reference to the contents of that conversation, respondent also says he was told that "readmission after suspension was, in some cases, automatic with the submission of an affidavit from the practitioner." (emphasis added)
{19 Respondent goes on to state in his affidavit that the 8x5 card was sent to him along with the rules applicable to reinstatement. The rules, attached as an exhibit to respondent's reply brief, are actually a form letter from the clerk's office relating to admission. The letter is undated, so that it cannot be determined when it was sent or received, but it states categorically that "Admission is a prerequisite to practice before the court."
« 20 The only other telephone conversation about which respondent provides any details took place after respondent filed his entry of appearance and Bailey's appellate brief on 14 May 1997. The record clearly indicates that respondent had the 8x5 card in his possession at the time of this phone call, but had not returned it. In this conversation, respondent was informed that he was in an untenable position, having practiced before the federal appellate court while under suspension. Based on both the timing and content of this call, it could not have contributed to respondent's purported belief that he could resume practice prior to reinstatement. Respondent never submitted the reinstate, ment form, nor did he take any other action to address his predicament following this last telephone conversation.
21 While the Bailey appeal was pending, respondent was also retained by Dennis Eid-son to represent him before the Tenth Circuit. The docket sheet records that on 16 June 1997 the court granted a motion to substitute respondent as Eidson's retained attorney. On 14 July 1997, respondent filed a brief on Eidson's behalf. Respondent states (in his original brief) that he assumed "he could have the suspension lifted within the time frame necessary to perfect the appeals of both clients [Le. Bailey and Eidson]." He also states in his reply brief that, "having been earlier ordered by the Circuit Court to handle the Bailey appeal, [he] believed that he was permitted to ... [handle the Eidson appeal] and that he could attend to his reinstatement application in due course."
122 Whether these statements are supported by the record depends upon when respondent had the conversation with the clerk in which he was told he was in an untenable position for having handled the Bailey appeal. Respondent indicates at several points in his testimony that this conversation took place a few days after he filed Bailey's brief. That brief was originally filed on 14 May 1997, but because the filing was deficient in some way, the Tenth Circuit gave respondent several other opportunities to refile it correctly.
1 23 If respondent's reference point for his conversation with the clerk is the date the brief was first filed, then his substitution as Eidson's attorney would have taken place approximately one month after he was told by the clerk that he was in an untenable position for having represented Bailey on *566 appeal while under a suspension. In that case, the statements referred to above regarding his belief that handling Eidson's appeal was proper are not supported by the record. On the other hand, if respondent spoke to the clerk later in the summer after properly re-filing the appellate brief, then he might not have known on the date he was substituted as Eidson's attorney that he was already in trouble for handling the Bailey appeal. Once again respondent's vagueness in recounting when events occurred undermines his attempt to provide a vindication of his misconduct.
T 24 On 15 October 1997, the federal appellate court directed respondent to show cause why he should not be disbarred for practising law while under suspension. Patterson did not respond to the order in part because he thought it was useless to do so and in part because he was personally and professionally overwhelmed by other matters.[9]
III
RESPONDENT SHOULD BE SUSPENDED FOR A PERIOD OF TWO YEARS AND ONE DAY AND SHOULD BE DIRECTED TO PAY THE COSTS OF THIS PROCEEDING
125 It is respondent's burden under the provisions of RGDP Rule 7.7(b) to provide the court with an explanation of his misconduct in the other jurisdiction from which we can confidently conclude that the other jurisdiction's disciplinary sanction may have been disproportionate to the offense committed. Respondent has provided us with a great deal of information, but much of it is too vague or too imprecise to sustain respondent's burden. The per curiam opinion by and large ignores respondent's failure to provide a comprehensible exculpatory account of his misconduct.
126 The essence of this reciprocal disciplinary proceeding's critical inquiry is whether the court will countenance disregard for the suspension order of another jurisdiction where a respondent fails to provide a eredi-ble vindication of his misconduct. Exeept for the mitigating circumstances of his partner's illness and his daughter's premature birth, respondent's account of the events leading to his suspension and then to his disbarment falls far short of what is necessary to avoid this court's imposition of a serious disciplinary sanction.
127 While respondent's narrative of the Reid and Deanovich appeals does provide this court with an explanation of his failure to brief those cases, it is not we but the Tenth Circuit that deserved that explanation. Not only did respondent fail to vigorously press with the Tenth Circuit his requests for withdrawal in those appeals, but he then also disobeyed an order by that court to explain his inaction in those cases. His disregard of that order demonstrates disrespect for that court and interfered with its ability to administer judicial process. While the coincidence of respondent's partner's illness and the commencement of the disciplinary case against respondent in the Tenth Circuit might explain respondent's failure to file a timely response to the show-cause order, it cannot exeuse his continuous neglect of his obligation to the court for five months. Moreover, respondent has provided no explanation for his failure to reply to the Tenth Circuit upon his partner's return to work.
128 As for the events that led to his disbarment in 1997, respondent admits that he practiced law in the Tenth Circuit while under suspension. The disbarment order stands as prima facie evidence of that fact. Because respondent's testimony on certain key points is so imprecise, I find insufficient support in the record to permit a finding that respondent's decision to proceed as Bailey's attorney was in fact the result of the forces he claims motivated him, including the impression he claims to have been given by the clerk's office that reinstatement did not have to precede the resumption of practice. For the same reason, I am unable to determine *567 whether respondent's explanation for undertaking to represent Eidson is consistent with other facts appearing in the record. Even if respondent had provided an account of the Bailey and Eidson appeals from which the intended conclusions could be drawn, he still would have failed to provide an explanation upon which to rest a lenient discipline. This is so because a lawyer may not rely upon the legal advice of a court clerk.[10]
{29 When the Tenth Cireuit called upon respondent to show cause for engaging in the unauthorized practice of law, he did not respond, thus repeating the disregard for the Tenth Cireuit's process that he had shown when he failed to obey its earlier show-cause order in 1998. A lawyer has a statutory duty to obey the lawful orders and writs of the courts.[11] The respect due the courts includes timely compliance with court orders absent a good faith belief that compliance is not legally required.[12] Neither competing professional and personal demands, nor feelings that one's chance of successfully defending oneself is remote, exeuse a lawyer's disobedience to a court's order to show cause in a disciplinary matter. The practice of law is replete with obligations that must be performed, deadlines that must be met, and minimum requirements that must be observed in spite of myriad conflicting pressures and competing demands.[13] When a lawyer disregards a court's orders, he undermines the authority of the judicial system. Respondent's conduct shows a pattern of neglecting the duty to obey court orders. Such misconduct should not be dealt with lightly.
1 30 The measure of discipline visited upon an offending lawyer should be consistent with the discipline meted out to other lawyers for similar acts of professional misconduct.[14] Applying that standard, I believe that disbarring respondent would be too severe in light of the mitigating cireumstances of which this court has been made aware,[15] while public censure is manifestly insufficient to satisfy the legitimate goals of administering discipline to errant lawyers and putting other members of the Bar on notice that we will not tolerate disregard of our oun or another jurisdiction's suspension orders.[16]
*568 31 At a minimum, vindication of the legitimate interests served by Oklahoma's bar disciplinary regime calls in this case for the imposition of a suspension of two years and one day together with the payment of the costs of this proceeding. Anything less than that would permit respondent to gain his readmission without this court's order. In light of respondent's past failure to adhere to even the minimum conditions prescribed by the rules of the Tenth Cireuit for license reinstatement after suspension, respondent should now be required to meet the stricter standard that governs in this jurisdiction one's restoration of legal license that has stood suspended for at least two years and one day.[17]

. State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 19, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Donnelly, 1992 OK 164, ¶ 14, 848 P.2d 543, 546; State ex rel. Okl. Bar Ass'n v. Colston, 1989 OK 74, ¶ 20, 777 P.2d 920, 925; State ex rel. Okl. Bar Ass'n v. Moss, 1983 OK 104, ¶ 12, 682 P.2d 205, 207.

. The provisions of Rule 7.7(a) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp. 1992 Ch.1, App.1 A, state:
"It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline." (emphasis added)

. State ex rel. Okl. Bar Ass'n v. Jaques II, 2000 OK 57, ¶ 26, 11 P.3d 621, 625 (Intentional deviation from the prescribed standards of ethical conduct gives. greater cause for concern than mere negligence.").

. State ex rel. Okl. Bar Ass'n v. Cummings, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; State ex rel. Okl. Bar Ass'n v. Hall, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.

. State ex rel. Okl. Bar Ass'n v. Wolfe, 1997 OK. 47, ¶ 15, 937 P.2d 988, 993; State ex rel. Okl. Bar Ass'n v. Holden, 1996 OK 88, ¶ 7, 925 P.2d 32, 36; State ex rel. Okl. Bar Ass'n v. Downing, 1993 OK 44, ¶ 16, 863 P.2d 1111, 1116.

. The pertinent portion of Rule 7.7(b) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992 Ch.1, App.1 A, states:
"... The documents [the order and other materials received by the Bar from the other jurisdiction] shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described..

. The pertinent portion of Rule 7.7(b) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992 Ch.1, App.1 A, states:
"... The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/ or any evidence tending to mitigate the severity of discipline. ..."

. In his testimony before the trial panel, respondent states his belief that the record contains all the letters he received from the court clerk's office. Rither his belief is wrong or there was no second letter in late March 1997.

. Patterson's wife had given birth to a premature baby on 7 March 1997. Respondent maintains that caring for the baby's needs interfered with his practice through much of 1997. Respondent also states that in October, when he was ordered by the Tenth Circuit to show cause, he was involved in a multi-defendant, out of state, securities case, which also interfered with his ability to respond to the Tenth Circuit's order.

. Cf. Strock v. Vanhorn, 919 F.Supp. 172, 173 (E.D.Pa.1996); Bank of Hawaii v. Shaw, 83 Hawai'i 50, 924 P.2d 544, 548 (Haw.Ct.App.1996).

. See the provisions of 5 0.$.1991 § 3, which state:
"It is the duty of an attorney and counselor: First, ... to obey all lawful orders and writs of the court."

. See In re Kelley, 52 Cal.3d 487, 276 Cal.Rptr. 375, 801 P.2d 1126, 1131 (1990) ("Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court.").

. Louisiana State Bar Ass'n. v. Thalheim, 504 So.2d 822, 826 (La.1987).

. State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 9, 914 P.2d 644, 648; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 16, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Perceful, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.

. Disbarment has been imposed by this court in reciprocal disciplinary proceedings only for the most egregious misconduct, usually involving multiple violations and a recalcitrant or uncooperative respondent. See State ex rel. Okl. Bar Ass'n v. Bransgrove, 1998 OK 93, 976 P.2d 540; State ex rel. Okl. Bar Ass'n v. Katz, 1987 OK 4, 733 P.2d 406; State ex rel. Okl. Bar Ass'n v. Smith, 1984 OK 17, 681 P.2d 749.

. This court has generally imposed severe discipline for the unauthorized practice of law by a lawyer whom we have suspended. See State ex rel. Okl. Bar Ass'n v. Downing, 1993 OK 44, 863 P.2d 1111, in which we disbarred an attorney who engaged in the unauthorized practice of law during a period of suspension, lied to a client about the status of a case and about his ability to continue with the representation, and failed to act with reasonable diligence and competence. In State ex rel. Okl. Bar Assn. v. Wolfe, 1997 OK 47, 937 P.2d 988, we disbarred an attorney who, in addition to engaging in the unauthorized practice of law while under suspension, had a history of disciplinary problems, neglected client matters, refused to take responsibility for his actions, and disregarded the disciplinary process. In State ex rel. Okl. Bar Assn. v. Holden, 1996 OK 88, 925 P.2d 32, the respondent had disregarded the court's suspension order almost from the date it was issued and misrepresented his actions in his response to the grievance inquiries of the Bar. We imposed a suspension of two years and one day. But see State ex rel. Okl. Bar Ass'n v. O'Neal, 1993 OK 61, 852 P.2d 713. In that case, we determined that the appropriate discipline for the unauthorized practice of law while under a suspension by this court for non-payment of bar dues and non-compliance with the Mandatory Continuing Legal Education (MCLE) require *568 ments was public censure where the only additional ethical violation was the respondent's failure to reply to the Bar's initial inquiry about his conduct.

. Cf. Holden, supra note 5 at ¶ 8, at 37.