28 P.3d 551 (2001)
2001 OK 51
STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
William J. PATTERSON, Respondent.
No. SCBD-4494.
Supreme Court of Oklahoma.
June 26, 2001.
Allen J. Welch, Assistant General Counsel, Oklahoma Bar Ass'n, Oklahoma City, for Complainant.
Patrick A. Williams, Tulsa, OK, for Respondent.
*553 PER CURIAM.
¶ 1 In this reciprocal disciplinary proceeding against a lawyer, the issues to be decided are (1) Does the record submitted for our examination provide sufficient evidence for a meaningful de novo consideration of the charge against respondent and of its disposition?[1] and (2) Is public censure an appropriate disciplinary sanction for respondent's breach of professional ethics? We answer both questions in the affirmative.

I

INTRODUCTION TO THE RECORD
¶ 2 On 14 January 1998, the United States Court of Appeals for the Tenth Circuit (the Tenth Circuit) disbarred William J. Patterson (Patterson or respondent), a lawyer licensed to practice in Oklahoma, for practising law while under an order of suspension. Respondent did not notify the Oklahoma Bar Association (the Bar or complainant) that discipline had been imposed upon him in another jurisdiction as required by Rule 7.7(a) of the Rules Governing Disciplinary Proceedings (RGDP).[2] The Bar was notified of respondent's disbarment by the Tenth Circuit Court Clerk's office. After an initial exchange of letters between respondent and the Bar, the Bar initiated this reciprocal disciplinary proceeding against respondent pursuant to RGDP Rule 7.7(b) [Rule 7.7(b) or the reciprocal disciplinary rule].[3]
¶ 3 The court then ordered respondent to show cause why reciprocal discipline should not be imposed. Upon consideration of the *554 briefs submitted by the parties, the court concluded that the record was insufficient for the disposition of the charge and ordered an adversarial hearing before a trial panel of the Professional Responsibility Tribunal.
¶ 4 A hearing was held on 8 February 1999, after which the trial panel issued a report containing its findings of fact, conclusions of law, and a recommendation for discipline. The trial panel concluded that respondent had violated the terms of RGDP Rule 7.7(a) by failing to notify the Bar that disciplinary action had been taken against him in the Tenth Circuit, but that the violation was the result of respondent's ignorance of the rule and was therefore not a deliberate effort at concealment. The panel also concluded that respondent had practiced law during a period of suspension, but that there was "sufficient confusion surrounding the original suspension order giving rise to the subsequent disbarment order" that respondent's degree of culpability for his disbarment was difficult to assess. The panel recommended public censure as the appropriate disciplinary measure. Respondent has agreed to pay the costs of this proceeding.[4]

II

THE RECORD BEFORE THE COURT CONTAINS SUFFICIENT EVIDENCE FOR A MEANINGFUL DE NOVO CONSIDERATION OF ALL FACTS RELEVANT TO THIS PROCEEDING
¶ 5 The instant proceeding is predicated on misconduct previously adjudicated in another jurisdiction. Respondent is therefore subject to the reciprocal disciplinary procedure set forth in Rule 7.7(b).[5] That rule authorizes the Bar to initiate disciplinary proceedings in this state whenever discipline has been imposed upon a lawyer by another state's highest court or by a federal court. The reciprocal disciplinary process is commenced when the Bar forwards to the Chief Justice a certified copy of the other jurisdiction's disciplinary order. Rule 7.7(b) states that the foreign order:
". . . shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of the transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma." (emphasis added)
¶ 6 The above-quoted portion of Rule 7.7(b) delimits the extent to which a respondent may challenge the adjudication of the other jurisdiction. A bar disciplinary proceeding is sui generis.[6] Because it is not civil in nature, neither the full faith and credit doctrine, which affords preclusive effect to the judgments of our sister-state courts,[7] nor any related doctrine giving similar preclusive effect to the judgments of federal *555 courts[8] requires us to accord interjurisdictional preclusion to the Tenth Circuit's adjudication of misconduct. A bar disciplinary case is more in the nature of a penal proceeding to which the rules governing interjurisdictional preclusion in civil cases do not apply.[9] The extent to which interjurisdictional preclusion is afforded in the context of a reciprocal disciplinary proceeding is mandated by the reciprocal disciplinary rule alone, which limits the respondent's attack on the other jurisdiction's fact-finding to the evidence contained in a certified copy of the transcript of the other jurisdiction's proceedings. Hence, the facts that resulted in the imposition of discipline by the other jurisdiction cannot be relitigated, but only reviewed within the context of the evidence previously presented in the other jurisdiction.[10] Respondent's failure to respond in this case to the Tenth Circuit's show-cause order preceding his disbarment leaves him without a transcript to submit for our consideration. He is therefore bereft of any basis upon which he may challenge the prima facie evidence of misconduct provided by the order disbarring him.
¶ 7 Beyond this rather limited scope of attack on the other jurisdiction's adjudication, the range of permissible inquiry in a reciprocal disciplinary proceeding stands confined to issues that are germane to the mitigation or severity of the bar disciplinary sanction which is to be visited upon the respondent.[11]
¶ 8 Having initially found the record to be insufficient for a determination of the appropriate disciplinary sanction, we returned this matter to a trial panel of the Professional *556 Responsibility Tribunal with directions to conduct an adversarial hearing at which respondent's misconduct could be thoroughly explored and his explanations and defenses aired.[12] The record of that hearing is now before us and we find that it is adequate for our de novo consideration of the appropriate measure of discipline to be imposed upon respondent for his professional misconduct.

III

FACTUAL BACKGROUND
¶ 9 In 1993, respondent came to represent two clients before the Tenth Circuit, Lloyd Michael Reid and David Kirkland Deanovich. Because an issue in both clients' appeals was the adequacy of respondent's representation below, respondent attempted to withdraw from both cases. He was not permitted to do so, and the conflict kept him from submitting appellate briefs for either client. The Tenth Circuit eventually removed him from both cases and ordered him to show cause why he should not be disciplined for his neglect. Patterson did not respond to the court's show-cause order, relinquishing the opportunity to explain his failure to prosecute the appeals. The Tenth Circuit suspended respondent from the practice of law.
¶ 10 In 1997, respondent represented a tax protester named Ralph Bailey before the United States District Court for the Northern District of Oklahoma. Although Bailey filed his notice of intent to appeal pro se, the Tenth Circuit Court Clerk's office began corresponding with respondent as Bailey's attorney. Upon receiving letters from the clerk's office that certain documents had to be filed or Bailey's appeal would be dismissed, respondent chose to file those documents despite his suspended status.
¶ 11 During the pendency of Bailey's appeal, respondent became involved in the Tenth Circuit with a second appellant named Dennis Eidson. Having been pressed by the clerk's office to proceed with Bailey's appeal, and having received no indication from the Tenth Circuit that there would be negative consequences for having done so, respondent says he mistakenly believed that he could go ahead and handle Eidson's appeal as well.
¶ 12 He was wrong. In October 1997, the Tenth Circuit ordered respondent to show cause why he should not be disciplined for practising law during a period of suspension. Patterson did not respond to the court's order and on 14 January 1998 he was disbarred by the Tenth Circuit.

IV

PATTERSON'S RESPONSE TO THE CHARGES AGAINST HIM
¶ 13 Under RGDP Rule 7.7(a),[13] a lawyer must inform the Bar whenever discipline has been imposed upon him in another jurisdiction. Respondent acknowledges having received contemporaneous notice of his disbarment, but claims he was unaware of his notification obligation. Consequently, he did not advise the Bar that the Tenth Circuit had suspended him in 1994, nor did he apprize it of his disbarment in 1998. Respondent's failure on two occasions to notify the Bar of the Tenth Circuit's actions is itself grounds for discipline.[14]
¶ 14 Upon receiving notice of respondent's disbarment, the Bar sent Patterson a letter informing him of the possibility of reciprocal discipline in Oklahoma. Respondent immediately sought legal assistance from an attorney named Charles Seger. In addition to agreeing to handle the matter with the Bar, Seger also agreed to represent respondent in *557 the Tenth Circuit. Unbeknownst to respondent, Seger was not admitted to practice before that court. Seger sent a letter dated 24 April 1998 to the Bar setting out respondent's explanation for the conduct which had resulted in his disbarment. Seger testified that he also mailed a copy of the letter to the Tenth Circuit, but he was unable to produce any physical proof of mailing. The letter contained misstatements of fact. Both Seger and respondent agree that respondent did not review the letter before it was sent, and only sometime later discovered that the letter contained errors.
¶ 15 Respondent testified that from April 1998 until he learned otherwise from the Bar in April 1999 he believed that Seger had filed a motion in the Tenth Circuit for a reconsideration of his disbarment. Respondent testified that Seger repeatedly told him that they were waiting for a response from the Court to the motion. Seger denies ever saying or implying that he had filed a motion. Seger claims that when he stated to respondent throughout 1998 and early 1999 that he was waiting to hear from the Tenth Circuit, he was only referring to a response from the Tenth Circuit to the copy he had sent of the 24 April 1998 letter to the Bar.
¶ 16 Respondent testified that on or about 12 January 1999 Seger came to his office and told him that they had heard nothing from the Tenth Circuit because they had failed to include a verification with the "motion." He presented a verification form to respondent who signed it despite never having seen the motion to which the verification referred.
¶ 17 On 1 March 1999, after being admitted to practice in the Tenth Circuit, Seger filed a motion for reconsideration of respondent's disbarment. It, too, contained inaccuracies and misrepresentations. It was promptly denied.

V

STATEMENTS MADE BY RESPONDENT THAT WERE MISLEADING OR INCONSISTENT
¶ 18 The trial panel report points out that three statements made by respondent, two in his initial brief to this court and one in the motion to reconsider filed on 1 March 1999 by Mr. Seger in the Tenth Circuit, were not supported by the record. The trial panel gave respondent an opportunity to explain these statements. After hearing the evidence and reviewing documents, the trial panel concluded that respondent had satisfactorily explained all three inaccuracies and stipulated to the facts that gave rise to that conclusion. We agree that respondent has satisfactorily explained two of the three.[15] As for the third statement, we agree that respondent has explained the narrow issue framed by the trial panel, but we discern in the statement the presence of a larger issue that remain inadequately elucidated.
¶ 19 When a stipulation is offered to this court in a bar disciplinary proceeding, it is incumbent upon us to determine if it accords with the applicable law and with the record in the case.[16] In his initial brief to this court, respondent stated that he believed applying for reinstatement before practising again in the Tenth Circuit was "merely a formality" that "could be taken care of in a routine manner." The veracity of this statement was brought into question when the Bar reviewed the motion to reconsider filed *558 in the Tenth Circuit by Mr. Seger on 1 March 1999. In that document, as well as in the 24 April letter he sent to the Bar, Seger described a conversation respondent had with the clerk's office in mid-April 1997, in which he "was told he should have an Application to be Reinstated on file before representing clients in that court." (emphasis added) If this was an accurate representation of what respondent was told in mid-April, then he could not have had an honest belief that resuming practice without first being reinstated was permissible when in mid-May he filed Bailey's appellate brief.
¶ 20 Respondent asserts that he was never told that he had to have an application on file before resuming practice. Instead, he contends that a Deputy Court Clerk told him that "he should have had an Application to be Reinstated on file before representing clients in that Court." The record supports respondent's claim that this statement was made to him, but not in the mid-April conversation. Rather the record reflects that the statement by the Clerk that respondent should have had an application on file was made to him in the last conversation he had with the clerk's office, which took place in mid-May (or later) after respondent had filed Bailey's appellate brief. Hence, that statement could have no bearing on what respondent reasonably believed about the necessity of reinstatement before he filed documents in Bailey's appeal. Neither the timing nor the contents of any other contacts respondent had with the clerk's office about reinstatement are presented in the record and we will not speculate on what might have been said in any such conversations.
¶ 21 Because we are not here relitigating the facts underlying respondent's disbarment, it is not absolutely necessary that we decide whether respondent had or did not have a reasonable belief that reinstatement did not have to precede the resumption of practice. It is enough for our purposes that respondent has failed to explain fully to us the circumstances by which he says he came to hold this belief. Without that elucidation, we cannot give much weight to this explanation in assessing an appropriate discipline.

VI

CIRCUMSTANCES TO BE CONSIDERED IN MITIGATION OF THE CHARGES

A.

Mitigating Factors Submitted by Stipulation Which Are Supported by the Record
¶ 22 On or about 1 September 1993, the date the Tenth Circuit ordered respondent to show cause for his failure to proceed with the Reid and Deanovich appeals, respondent's law partner was hospitalized.[17] He was hospitalized again in October. Due to his medical condition, respondent's partner was unable to work from September until mid-December 1993, and respondent was forced to carry on the practice for both of them.
¶ 23 In a letter to the Tenth Circuit after he received the show-cause order, respondent set out his partner's health problem and asked for additional time to respond. The Court granted him a two-week extension. At no time after obtaining this extension did respondent either submit a response or seek an additional extension of time. Respondent attributes his noncompliance with the show-cause order to the overwhelming work load that his partner's illness shifted to him. While the demands of respondent's active *559 practice on behalf of two lawyers do not excuse his failure to either respond to the show-cause order or communicate to the Tenth Circuit his reasons for being unable to respond, they do operate to mitigate his culpability for this dereliction during the period of his partner's absence.
¶ 24 Although respondent's partner returned to the practice in December 1993,[18] respondent's noncompliance with the show-cause order extended right up to the date he was suspended in February 1994. While respondent's culpability for noncompliance with the Tenth Circuit's order may be mitigated by his partner's absence between September and mid-December, respondent has offered us no explanation in mitigation of his failure to respond to the federal court's order after his partner's return.
¶ 25 In mitigation of his unauthorized practice of law in the Tenth Circuit in 1997, respondent asks us to consider his daughter's premature birth, which coincided with the inception of the Bailey appeal. The record shows that respondent's daughter was born prematurely on 7 March 1997. Respondent informs us in his brief and in his testimony that the care required by his premature baby left him exhausted.[19] In some measure, respondent attributes his unauthorized practice of law to the stress and fatigue he experienced in connection with the birth and care of his premature baby. We have taken respondent's preoccupation with his daughter's care into consideration in assessing an appropriate discipline.
¶ 26 The trial panel also accepted the parties' stipulation in mitigation that respondent has fully cooperated with the Office of the General Counsel, notwithstanding three "misrepresentations or inconsistencies" appearing in various documents prepared by respondent or on his behalf.[20] We agree that respondent has fully cooperated in the sense that he has provided timely responses to the Bar and to this Court and has answered all questions asked of him.

B.

Additional Mitigating Factor Raised by The Trial Panel
¶ 27 The trial panel in its report points out that the Tenth Circuit's order suspending respondent in 1994 failed to designate the length of respondent's suspension. This omission, says the trial panel, made it impossible for respondent to know how to comply with the Tenth Circuit's rule on reinstatement, which ties the appropriate procedure to the length of a suspension.[21] We would point out that respondent's problem was not that he mistakenly used the wrong procedure or that he did not know which procedure to use. His problem  and the reason he is before us today  is that he deliberately chose not to follow any procedure. Rather, he resumed practice without complying with even the minimal procedure applicable to a suspension of six months or less. We hence do not believe that the Tenth Circuit's omission of the length of respondent's suspension has any relevance to our evaluation of his misconduct.

*560 C.

Other Mitigating Factors
¶ 28 In addition to the agreed factors in mitigation, the record contains numerous affidavits from respondent's colleagues attesting to his honesty, integrity, and competence. We have duly noted the esteem in which many of respondent's peers hold him. Respondent has also pointed out that none of his clients was harmed by his misconduct in the Tenth Circuit. While this may be true, its mitigating effect is minimal for the reason that respondent's conduct exposed his clients to the risk that their right to appeal could be adversely affected. Moreover, while no client may have been harmed, respondent's repeated disregard of court rules and orders was detrimental to the administration of judicial process. Finally, we acknowledge that respondent has never before been disciplined by this court and that he has exhibited remorse for his conduct.

VII

RESPONDENT'S MISCONDUCT WARRANTS A PUBLIC REPRIMAND TOGETHER WITH PAYMENT OF THE COSTS OF THIS PROCEEDING
¶ 29 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. The disciplinary process, including the imposition of a disciplinary sanction, is designed not to punish the delinquent lawyer, but to safeguard the interest of the public, the judiciary, and the legal profession.[22] Disciplinary sanctions not only serve to deter the offending lawyer from committing similar acts in the future, but also operate to put others on notice that departures from ethical norms will not be tolerated.[23] The disciplinary measure imposed upon an offending lawyer should be consistent with the discipline imposed upon other lawyers for similar acts of professional misconduct.[24]
¶ 30 The trial panel recommended that respondent be publicly censured. We agree. Respondent's failure to inform the Bar on two occasions that he had been disciplined by the Tenth Circuit, while sanctionable, was not a deliberate effort at concealment, but rather occurred as the result of ignorance. Under these circumstances, this dereliction does not warrant a severe sanction. That respondent's discipline in this case is in part attributable to his failure to notify the Bar of the Tenth Circuit's action stands as warning enough for other practitioners that they must familiarize themselves with their obligations under Oklahoma's disciplinary regime.
¶ 31 The Tenth Circuit's disbarment order is prima facie proof that respondent engaged in the unauthorized practice of law during a period of suspension. Disregard of a suspension order is a serious matter and for that disregard the Tenth Circuit has imposed the ultimate disciplinary sanction on respondent. Respondent twice failed to respond to the Tenth Circuit's show-cause orders, depriving himself of the opportunity to explain his conduct and mitigate the disciplinary sanctions visited upon him in that jurisdiction. He has taken advantage of that opportunity before this court, which as a result views his disciplinary problems in the Tenth Circuit as warranting a less severe discipline than that meted out by the other court.
¶ 32 Having considered all the circumstances surrounding respondent's misconduct, including the wilfulness and seriousness of the violations, extenuating and mitigating factors, respondent's lack of ethical violations both before and after the commencement of *561 this proceeding, his cooperation with the Bar's disciplinary process, and his obvious remorse for his conduct, we conclude that public censure together with the imposition of the costs of this proceeding is the appropriate disciplinary measure.[25]

VIII

SUMMARY
¶ 33 In a reciprocal disciplinary proceeding, it is within this court's discretion to visit the same discipline as that imposed in the other jurisdiction or one of greater or lesser severity. The discipline imposed by the Tenth Circuit  disbarment  is too severe. Public censure is sufficient to satisfy the legitimate goals of administering professional discipline to errant lawyers and of deterring similar conduct by others. We hence conclude that respondent is to be publicly censured and ordered to pay the costs of this proceeding.
¶ 34 RESPONDENT IS ORDERED DISCIPLINED BY PUBLIC CENSURE AND IS DIRECTED TO PAY THE COSTS OF THIS PROCEEDING, WHICH SHALL BE DUE NOT LATER THAN NINETY DAYS AFTER THIS OPINION BECOMES FINAL.
¶ 35 HARGRAVE, C.J., WATT V.C.J., and HODGES, LAVENDER, KAUGER, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.
¶ 36 OPALA, J., dissents in part.
OPALA, J., dissenting in part.
¶ 1 I concur in visiting discipline on the respondent, but dissent from the lenient sanction imposed, which is disproportionate to the gravity of the misconduct underlying his earlier disbarment by the United States Court of Appeals for the Tenth Circuit (Tenth Circuit). It also ignores respondent's failure to give a clear and comprehensible exculpatory account of that conduct. I would instead suspend respondent's legal license for a period of two years and one day.
¶ 2 A license to practice law is not conferred for the benefit of the licensee, but for that of the public. When a legal practitioner acts outside the bounds of permissible professional conduct, this court must hold a thorough examination into his (or her) continued fitness to practice law.[1] Today's per curiam opinion retreats from the exhaustive scrutiny of respondent's conduct prescribed by this court's prior decisions. Had the requisite examination been performed, it would have led to the inescapable conclusion  that respondent has demonstrated a lack of fitness to practice law.

I

INTRODUCTION TO THE RECORD
¶ 3 Rule 7.7(a) of the Rules Governing Disciplinary Proceedings requires a lawyer who has been disciplined in another jurisdiction to inform the General Counsel of the Oklahoma Bar Association of that fact.[2] Respondent was twice disciplined by the Tenth Circuit and both times failed to provide the required notification. Respondent claims that he was unaware of his obligation to *562 notify the Bar of foreign-imposed discipline. The trial panel members, who saw and heard respondent, found this explanation credible. Nothing in the record conflicts with this finding and I concur. Ignorance of a disciplinary rule is not a complete defense to a lawyer's failure to comply with that rule, but where there is an absence of a deceitful motive, it may be considered as a mitigating factor.[3]
¶ 4 Disciplinary sanctions not only serve to deter the offending lawyer from committing similar acts in the future, but also operate to put other practitioners on notice that departures from ethical norms will not be tolerated.[4] Respondent's ignorance of his duty to notify the Bar of having been disciplined by another jurisdiction suggests that the obligation imposed by the reciprocal disciplinary rule may not be widely known by legal practitioners. Hence, were this respondent's only offense, I would nevertheless advocate a public reprimand for it alone. I would do so not to punish or embarrass respondent, but in order to put other practitioners on notice of their duty to notify the Bar of discipline imposed by another jurisdiction.
¶ 5 Violation of the notice provision contained in the reciprocal disciplinary rule is not the sole episode of professional misconduct committed by respondent and public censure is hence not sufficient to vindicate the interests we are bound to protect. The gravamen of this case is that respondent practiced law in the Tenth Circuit while subject to an order of suspension and then ignored that court's order to explain his actions. We have on more than one occasion put members of the Bar on notice that this court will not tolerate disregard of our orders of suspension.[5] Today's disposition puts lawyers on notice of a different sort-that we will tolerate, or at least not seriously discipline, disregard of another jurisdiction's orders of suspension.
¶ 6 A reciprocal disciplinary proceeding is not a retrial of the facts that resulted in respondent's disbarment. The Tenth Circuit's disbarment order stands as prima facie evidence that respondent practiced law while under suspension and that he failed to respond to the court's show cause order.[6] Today's inquiry is limited to issues relevant to the appropriate discipline in this jurisdiction for his adjudicated misconduct. A respondent is given the opportunity under Rule 7.7(b) of the Rules Governing Disciplinary Proceedings to provide this court with explanatory and mitigating information which demonstrates that the other jurisdiction's disciplinary sanction was not commensurate with his misconduct and should not be duplicated by this court.[7] The per curiam opinion apparently concludes that respondent has successfully borne this burden, for not only has the court determined that disbarment is too severe a disciplinary sanction, but that even a mild suspension would be excessive. My own analysis of the record, which is set forth below, fails to discern support for the court's indulgent view of respondent's conduct or for the lenient sanction the court has crafted.

*563 II

THE CHARGES AGAINST RESPONDENT

A.

The Conduct that Resulted in Respondent's Suspension: 1993-1994
¶ 7 In the fall of 1992, respondent was retained by Lloyd Michael Reid to defend him against criminal charges filed in the United States District Court for the Northern District of Oklahoma. Pursuant to a plea bargain, Reid pled guilty and was sentenced to two consecutive five-year terms in prison. Between the date he entered his plea and the date of his sentencing, Reid apparently became convinced that the plea agreement had not been in his best interest and expressed to respondent his desire to appeal his sentence. Respondent complied with Reid's wishes by filing a notice of intent to appeal. Finding himself in the position of representing a client who was appealing a plea bargain he had arranged, respondent also filed an application in the Tenth Circuit to withdraw as Reid's attorney. The application gave no reason for respondent's request to withdraw. It was denied without prejudice.
¶ 8 Respondent went on to file some but not all of the initial documents that would perfect Reid's appeal. The omission of a necessary document caused the Tenth Circuit on 10 May 1993 to issue an order to respondent to show cause why he should not be disciplined for failure to prosecute Reid's appeal. Respondent immediately sent a letter dated 19 May apologizing for his untimely handling of the case. In the letter, respondent informed the court that the effectiveness of his representation below would be an issue on appeal, but then, instead of renewing his request to withdraw, respondent proceeded to defend the plea bargain he had struck for Reid. He concluded the letter by assuring the court that the situation would not repeat itself. He then filed the document that had precipitated the court's disciplinary process.
¶ 9 On 4 June 1993, the Tenth Circuit discharged the show-cause order, appointed respondent to handle Reid's appeal, and set a due date for appellant's brief. Approximately three weeks later, respondent received a letter from Reid accusing him of gross acts of impropriety in the handling of his case. Respondent states that he was unnerved by what he perceived as the threatening tone of this letter. Nevertheless, respondent filed nothing further in the federal appellate court seeking to obtain permission to withdraw. Respondent did not file a brief for Reid, and on 20 August, the Tenth Circuit removed respondent from the case for failure to prosecute the appeal.
¶ 10 In January 1993, respondent was appointed by the United States District Court for the Northern District of Oklahoma to represent another criminal defendant, David Kirkland Deanovich. Deanovich, too, agreed to a plea bargain negotiated by respondent. Like Reid, Deanovich decided to appeal the negotiated plea and informed respondent that he wanted other counsel to handle his case. To preserve his client's right to appeal, respondent filed a notice of intent to appeal and, in response to Deanovich's desire to have other counsel, respondent filed an application in the District Court to withdraw as Deanovich's attorney. The District Court denied respondent's request.
¶ 11 Respondent proceeded to file all the preliminary paperwork necessary to perfect the appeal, but never filed a brief on appellant's behalf. On 16 August 1993 the federal appellate court removed respondent as Deanovich's counsel. Nothing appears in the record before this court indicating that respondent's concerns about continuing to represent Deanovich were ever communicated to the Tenth Circuit or that he ever moved in the Tenth Circuit for permission to withdraw.
¶ 12 On 1 September 1993, the Tenth Circuit ordered respondent to show cause why he should not be disciplined for failure to prosecute the Reid and Deanovich appeals. Within the time prescribed, respondent requested additional time to answer the charges, but never thereafter submitted any response. On 2 February 1994, the Tenth *564 Circuit suspended respondent from the practice of law.

B.

The Conduct that Resulted in Respondent's Disbarment: 1997
¶ 13 In February of 1997, respondent defended a tax protester named Ralph Bailey in a revocation hearing before the United States District Court for the Northern District of Oklahoma. Bailey's probation was revoked for one month, a decision Bailey desired to appeal. Because his 1993 suspension was still in effect, respondent informed Bailey that he could not represent him before the federal appellate court. Bailey was unwilling to retain other counsel and filed pro se a notice of intent to appeal. Respondent states in his affidavit that he did not prepare or sign the notice of intent to appeal, but did sign the attached certificate of service as "server."
¶ 14 Shortly thereafter, respondent received a letter from the Tenth Circuit Court Clerk's office dated 13 March 1997. It was addressed jointly to him and Bailey and the greeting stated "Dear Counsel." The letter contained instructions for attorneys on filing an entry of appearance and provided the schedule for filing documents to perfect the appeal. Because he did not draft, sign, or file Bailey's notice of intent to appeal, respondent did not consider himself Bailey's attorney and testified that he "took no action pursuant to this letter."
¶ 15 Respondent then recalls in his testimony that:
"... they wrote me another letter in ten or fourteen days saying if you don't respond, Dr. Bailey's appeal could be dismissed and so I thought, well, I can't let Dr. Bailey's appeal be dismissed and so I proceeded to perfect the necessary documents that would position Dr. Bailey to be able to subsequently brief his appeal."
Respondent appears to be referring here to the filing of the initial appeal documents, which were due by 24 March. Receipt of a letter on or about 24 March directing respondent to proceed with Bailey's appeal or risk dismissal would explain the pressure respondent testified he felt he was under to get the necessary documents on file even though he knew he had not complied with, or perhaps at this stage even inquired about, the reinstatement procedure. The preliminary appeal documents were filed by 28 March.
¶ 16 Yet, the record contains no letter from the clerk's office corresponding to the date respondent says he received this second letter[8] and he does not even mention it in his affidavit or reply brief. In fact, both of those documents jump from the 13 March letter, in response to which respondent says he took no action, to a letter dated 14 April, in response to which he says he "proceeded with Bailey's appeal process." In his reply brief, respondent states that it was his compliance "with the directive in the letter of April 14, 1997" that caused him to engage in the unauthorized practice of law. Additionally, in his affidavit he states that when he was told by the Tenth Circuit Court Clerk's office that he was in trouble for handling the Bailey appeal while under a suspension, he pointed out that he "was acting under the directives of the April 14, 1997, letter." It is impossible to reconcile these statements with the statement quoted earlier indicating that respondent filed the initial appeal documents in March unless respondent does not consider the filing of those documents to be part of the practice of law. Moreover, if these statements are correct, it would mean that the first documents respondent filed in the Bailey case were his entry of appearance and Bailey's appellate brief, both of which were filed on 14 May. That would have given respondent a month from the date of the 14 April letter to inquire about reinstatement and take whatever action was necessary in order to be reinstated before the brief was due on 14 May. The time pressure and the need to conform to a directive from the court would be far less than they would have been in relation to filing of the documents on 28 *565 March. These conflicting statements, together with the absence from the record of a letter from the clerk's office bearing a date circa 24 March, weaken respondent's attempt to explain his misconduct as a response to the directives he claims to have received from the clerk's office.
¶ 17 Respondent's account of his contacts with the clerk's office regarding reinstatement are equally imprecise. Respondent asserts that he resumed practising law in the federal appellate court under the mistaken impression that reinstatement was merely a formality that did not have to precede the resumption of practice. Respondent testified that he discussed reinstatement with a member of the clerk's office at least three times and perhaps as many as five times, but the record recounts the contents of only two calls, neither of which took place prior to the date on which the initial appeal documents were filed.
¶ 18 The first phone call respondent describes took place more or less contemporaneously with his receipt of the letter of 14 April. Of that phone call respondent says in his affidavit, "I called the Tenth Circuit Court Clerk and was told I would be sent a 3x5 readmission card to be allowed to once again practice...." In reference to the contents of that conversation, respondent also says he was told that "readmission after suspension was, in some cases, automatic with the submission of an affidavit from the practitioner." (emphasis added)
¶ 19 Respondent goes on to state in his affidavit that the 3x5 card was sent to him along with the rules applicable to reinstatement. The rules, attached as an exhibit to respondent's reply brief, are actually a form letter from the clerk's office relating to admission. The letter is undated, so that it cannot be determined when it was sent or received, but it states categorically that "Admission is a prerequisite to practice before the court."
¶ 20 The only other telephone conversation about which respondent provides any details took place after respondent filed his entry of appearance and Bailey's appellate brief on 14 May 1997. The record clearly indicates that respondent had the 3x5 card in his possession at the time of this phone call, but had not returned it. In this conversation, respondent was informed that he was in an untenable position, having practiced before the federal appellate court while under suspension. Based on both the timing and content of this call, it could not have contributed to respondent's purported belief that he could resume practice prior to reinstatement. Respondent never submitted the reinstatement form, nor did he take any other action to address his predicament following this last telephone conversation.
¶ 21 While the Bailey appeal was pending, respondent was also retained by Dennis Eidson to represent him before the Tenth Circuit. The docket sheet records that on 16 June 1997 the court granted a motion to substitute respondent as Eidson's retained attorney. On 14 July 1997, respondent filed a brief on Eidson's behalf. Respondent states (in his original brief) that he assumed "he could have the suspension lifted within the time frame necessary to perfect the appeals of both clients [i.e. Bailey and Eidson]." He also states in his reply brief that, "having been earlier ordered by the Circuit Court to handle the Bailey appeal, [he] believed that he was permitted to ... [handle the Eidson appeal] and that he could attend to his reinstatement application in due course."
¶ 22 Whether these statements are supported by the record depends upon when respondent had the conversation with the clerk in which he was told he was in an untenable position for having handled the Bailey appeal. Respondent indicates at several points in his testimony that this conversation took place a few days after he filed Bailey's brief. That brief was originally filed on 14 May 1997, but because the filing was deficient in some way, the Tenth Circuit gave respondent several other opportunities to re-file it correctly.
¶ 23 If respondent's reference point for his conversation with the clerk is the date the brief was first filed, then his substitution as Eidson's attorney would have taken place approximately one month after he was told by the clerk that he was in an untenable position for having represented Bailey on *566 appeal while under a suspension. In that case, the statements referred to above regarding his belief that handling Eidson's appeal was proper are not supported by the record. On the other hand, if respondent spoke to the clerk later in the summer after properly re-filing the appellate brief, then he might not have known on the date he was substituted as Eidson's attorney that he was already in trouble for handling the Bailey appeal. Once again respondent's vagueness in recounting when events occurred undermines his attempt to provide a vindication of his misconduct.
¶ 24 On 15 October 1997, the federal appellate court directed respondent to show cause why he should not be disbarred for practising law while under suspension. Patterson did not respond to the order in part because he thought it was useless to do so and in part because he was personally and professionally overwhelmed by other matters.[9]

III

RESPONDENT SHOULD BE SUSPENDED FOR A PERIOD OF TWO YEARS AND ONE DAY AND SHOULD BE DIRECTED TO PAY THE COSTS OF THIS PROCEEDING
¶ 25 It is respondent's burden under the provisions of RGDP Rule 7.7(b) to provide the court with an explanation of his misconduct in the other jurisdiction from which we can confidently conclude that the other jurisdiction's disciplinary sanction may have been disproportionate to the offense committed. Respondent has provided us with a great deal of information, but much of it is too vague or too imprecise to sustain respondent's burden. The per curiam opinion by and large ignores respondent's failure to provide a comprehensible exculpatory account of his misconduct.
¶ 26 The essence of this reciprocal disciplinary proceeding's critical inquiry is whether the court will countenance disregard for the suspension order of another jurisdiction where a respondent fails to provide a credible vindication of his misconduct. Except for the mitigating circumstances of his partner's illness and his daughter's premature birth, respondent's account of the events leading to his suspension and then to his disbarment falls far short of what is necessary to avoid this court's imposition of a serious disciplinary sanction.
¶ 27 While respondent's narrative of the Reid and Deanovich appeals does provide this court with an explanation of his failure to brief those cases, it is not we but the Tenth Circuit that deserved that explanation. Not only did respondent fail to vigorously press with the Tenth Circuit his requests for withdrawal in those appeals, but he then also disobeyed an order by that court to explain his inaction in those cases. His disregard of that order demonstrates disrespect for that court and interfered with its ability to administer judicial process. While the coincidence of respondent's partner's illness and the commencement of the disciplinary case against respondent in the Tenth Circuit might explain respondent's failure to file a timely response to the show-cause order, it cannot excuse his continuous neglect of his obligation to the court for five months. Moreover, respondent has provided no explanation for his failure to reply to the Tenth Circuit upon his partner's return to work.
¶ 28 As for the events that led to his disbarment in 1997, respondent admits that he practiced law in the Tenth Circuit while under suspension. The disbarment order stands as prima facie evidence of that fact. Because respondent's testimony on certain key points is so imprecise, I find insufficient support in the record to permit a finding that respondent's decision to proceed as Bailey's attorney was in fact the result of the forces he claims motivated him, including the impression he claims to have been given by the clerk's office that reinstatement did not have to precede the resumption of practice. For the same reason, I am unable to determine *567 whether respondent's explanation for undertaking to represent Eidson is consistent with other facts appearing in the record. Even if respondent had provided an account of the Bailey and Eidson appeals from which the intended conclusions could be drawn, he still would have failed to provide an explanation upon which to rest a lenient discipline. This is so because a lawyer may not rely upon the legal advice of a court clerk.[10]
¶ 29 When the Tenth Circuit called upon respondent to show cause for engaging in the unauthorized practice of law, he did not respond, thus repeating the disregard for the Tenth Circuit's process that he had shown when he failed to obey its earlier show-cause order in 1993. A lawyer has a statutory duty to obey the lawful orders and writs of the courts.[11] The respect due the courts includes timely compliance with court orders absent a good faith belief that compliance is not legally required.[12] Neither competing professional and personal demands, nor feelings that one's chance of successfully defending oneself is remote, excuse a lawyer's disobedience to a court's order to show cause in a disciplinary matter. The practice of law is replete with obligations that must be performed, deadlines that must be met, and minimum requirements that must be observed in spite of myriad conflicting pressures and competing demands.[13] When a lawyer disregards a court's orders, he undermines the authority of the judicial system. Respondent's conduct shows a pattern of neglecting the duty to obey court orders. Such misconduct should not be dealt with lightly.
¶ 30 The measure of discipline visited upon an offending lawyer should be consistent with the discipline meted out to other lawyers for similar acts of professional misconduct.[14] Applying that standard, I believe that disbarring respondent would be too severe in light of the mitigating circumstances of which this court has been made aware,[15] while public censure is manifestly insufficient to satisfy the legitimate goals of administering discipline to errant lawyers and putting other members of the Bar on notice that we will not tolerate disregard of our own or another jurisdiction's suspension orders.[16]
*568 ¶ 31 At a minimum, vindication of the legitimate interests served by Oklahoma's bar disciplinary regime calls in this case for the imposition of a suspension of two years and one day together with the payment of the costs of this proceeding. Anything less than that would permit respondent to gain his readmission without this court's order. In light of respondent's past failure to adhere to even the minimum conditions prescribed by the rules of the Tenth Circuit for license reinstatement after suspension, respondent should now be required to meet the stricter standard that governs in this jurisdiction one's restoration of legal license that has stood suspended for at least two years and one day.[17]
NOTES
[1] The record consists of a pre-trial order, the parties' stipulations, a transcript of the hearing held before a trial panel of the Professional Responsibility Tribunal, exhibits offered by both parties, which were admitted into evidence at that hearing, respondent's 7 May 1999 reply brief with attached exhibits, which was admitted into evidence by order of the trial panel's presiding master as a supplement to the record of the proceedings before the panel, and the Report of the Professional Responsibility Tribunal.
[2] The provisions of Rule 7.7(a), Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. Supp. 1992 Ch. 1, App.1-A, state:

"It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline."
[3] The provisions of RGDP Rule 7.7(b), 5 O.S. Supp.1992 Ch. 1, App.1-A, state:

"When a lawyer has been adjudged guilty of misconduct in a disciplinary proceeding, except contempt proceedings, by the highest court of another State or by a Federal Court, the General Counsel of the Oklahoma Bar Association may cause to be transmitted to the Chief Justice a certified copy of such adjudication and the Chief Justice shall direct the lawyer to appear before the Supreme Court at a time certain, not less than ten (10) days after mailing of notice, and show cause, if any he/she has, why he/she should not be disciplined. The documents shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described. The lawyer may submit a certified copy of the transcript of the evidence taken in the trial tribunal of the other jurisdiction to support his/her claim that the finding therein was not supported by the evidence or that it does not furnish sufficient grounds for discipline in Oklahoma. The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline."
[4] The Bar has also asked this court to enter an order that respondent be assessed the costs of this proceeding. Today's disposition orders respondent to pay costs.
[5] See RGDP Rule 7.7(b) supra note 3.
[6] See Matter of Beren, 178 Ariz. 400, 874 P.2d 320, 322 (Ariz.1994).
[7] The Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, provides: "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." It requires the states to accord interjurisdictional preclusion to the judicial acts of other states. The full faith and credit statute, 28 U.S.C. § 1738, enacted by Congress in 1790, additionally requires all state and federal courts to treat a state court judgment with the same respect that it would receive in the courts of the rendering state.
[8] Neither the Full Faith and Credit Clause of the United States Constitution, Art. IV, § 1, nor the full faith and credit statute, 28 U.S.C. § 1738, by its terms imposes any obligation on state courts to give preclusive effect to federal court judgments. Nevertheless, the United States Supreme Court in a series of early cases held that those provisions require states to afford preclusive effect to federal adjudications. See Bigelow v. Old Dominion Copper Mining & Smelting Co., 225 U.S. 111, 129-30, 32 S.Ct. 641, 56 L.Ed. 1009 (1912); Hancock Natl. Bank v. Farnum, 176 U.S. 640, 645, 20 S.Ct. 506, 44 L.Ed. 619 (1900); Phoenix Fire & Marine Ins. Co. v. Tennessee, 161 U.S. 174, 185, 16 S.Ct. 471, 40 L.Ed. 660 (1896). While the Court's reasoning in these cases has been sharply criticized, the result is generally acknowledged to be correct, albeit on other constitutional and/or statutory grounds. See, e.g., Joan Steinman, The Newest Frontier of Judicial Activism: Removal Under the All Writs Act, 80 B.U.L.Rev. 773, 883, n. 56 (June 2000) (taking note of recent literature exploring the extension of full faith and credit principles to federal judgments in subsequent state proceedings); Howard Erichson, Interjurisdictional Preclusion, 96 Mich. L.Rev. 945, 986 (1998) ("If a state court ever failed to ... [give effect to a federal court judgment], it would be inconceivable that the United States Supreme Court would be powerless to reverse, and commentators have offered sound explanations for imposing a federal-state preclusion obligation on the states as a matter of federal law."); Allan D. Vestal, Protecting A Federal Court Judgment, in 42 Tenn. L.Rev. 635 (1975). Oklahoma has recognized the binding effect of federal court decisions in our own state proceedings. Veiser v. Armstrong, 1984 OK 61, ¶ 7, n. 5, 688 P.2d 796, 799, n. 5 ("When a federal-court judgment is attacked collaterally in a state court, it is entitled to the same faith and credit as that given to it under the applicable federal law."). Accord Watkins v. Resorts Int'l. Hotel & Casino, 124 N.J. 398, 591 A.2d 592, 598 (1991) ("When a state court considers the binding effect of a federal court judgment, nothing less is at stake than the integrity of federal judicial power and the coherence of the federalist judicial system."); Pansy v. Borough of Stroudsburg, 23 F.3d 772, 784 (3d Cir.1994); Bardo v. Pennsylvania Dep't. of Welfare, 40 Pa.Cmwlth. 585, 397 A.2d 1305, 1307 (1979).
[9] Nelson v. George, 399 U.S. 224, 229, 90 S.Ct. 1963, 1966-67, 26 L.Ed.2d 578 (1970); Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed. 1123 (1892).
[10] See also RGDP Rule 7.2, governing post-criminal conviction proceedings against a lawyer, which provides that certified copies of the indictment or information and judgment and sentence of conviction "shall ... be conclusive evidence of the commission of the crime upon which the judgment and sentence is based ...." (emphasis added); see State ex rel. Okla. Bar Ass'n. v. Livshee, 1994 OK 12, ¶ 2, 870 P.2d 770, 772 ("In a post-conviction disciplinary hearing facts that gave rise to the criminal charge, which resulted in respondent's conviction, cannot be relitigated.").
[11] This limitation is set forth in Rule 7.7(b):

"The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/or any evidence tending to mitigate the severity of discipline. The General Counsel may respond by submission of a brief and/or any evidence supporting a recommendation of discipline."
[12] The court's authority to require an adversarial hearing in a reciprocal disciplinary case is not set forth in Rule 7.7(b), but is derived from the court's exclusive original jurisdiction in bar disciplinary cases. See RGDP Rule 1.1, which states:

"This Court declares that it possesses original and exclusive jurisdiction in all matters involving admission of persons to practice law in the State, and to discipline for cause, any and all persons licensed to practice law in Oklahoma,. . ."
See also State ex rel. Okl. Bar Ass'n v. Leigh, 1996 OK 37, ¶ 11, 914 P.2d 661, 666; State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 8, 914 P.2d 644, 647; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 15, 880 P.2d 339, 344.
[13] See RGDP Rule 7.7(a) supra note 2.
[14] Id.
[15] The first error is respondent's statement in his initial brief to this court that he did not "apply to have his suspension lifted until the Spring of 1997." This statement was inaccurate in that he never applied for reinstatement in 1997 or at any other time. Respondent asserts that what he intended to convey in that statement was that he had merely asked the Tenth Circuit Court Clerk's office at that time about reinstatement. We accept respondent's explanation that his misstatement was an unintentional error resulting from a poor choice of words.

Also in error was the statement contained in the motion for reconsideration filed in the Tenth Circuit in March 1999 and in Mr. Seger's letter of 24 April 1998 to the Bar that respondent was not aware of his disbarment until he received word of it from the Bar in its letter to him of 1 April 1998. In fact, respondent received notice from the Tenth Circuit of its disciplinary action against him in January 1998. Respondent never saw the letter or motion prepared by Mr. Seger and was unaware that his attorney had misstated the facts. We accept his correction.
[16] State ex rel. Okla. Bar Ass'n. v. Livshee, 1994 OK 12, ¶ 7, 870 P.2d 770, 774.
[17] The stipulations recite that respondent's law partner was hospitalized for a heart attack on or about 1 September 1993, that he was discharged on 9 September, that he was hospitalized again on 26 October for depression, that he was discharged on 1 November, and that he returned to work in December. The stipulations state that he was incapable of practising law for more than three months. While the record supports respondent's claim that his partner had serious medical problems in the Fall of 1993, it does not bear out the details of respondent's partner's first hospitalization. These records show that on 30 August respondent's partner was admitted to the hospital suffering from depression. When hospitalized again in October, the consulting physician's history omits any mention of respondent's partner suffering a heart attack in September 1993. That being said, the medical records clearly indicate that respondent's partner suffered a depressive disorder that undoubtedly interfered with his ability to work.
[18] We are unable to determine from the record precisely when respondent's partner returned to work, but respondent's testimony that his partner was absent for approximately three and one-half months permits us to conclude that he probably returned in mid-December.
[19] Respondent's statements about the time period during which his daughter's care kept him up nights are unclear. He says that she required feeding every three (3) hours for the first several weeks of her life, but then says that his sleep was affected for much of 1997. The first several weeks of the baby's life, even interpreted generously, does not coincide with "much of 1997." We recognize that all newborns require feeding every three to four hours for many weeks and that a baby's needs wreak havoc on parents' ability to rest, but we are unable to determine from the record to what extent respondent's care of his daughter was extraordinary in content or duration.
[20] See supra Part V of this opinion.
[21] The Tenth Circuit's rule on reinstatement provides:

"10.1 An attorney suspended for six months or less is automatically reinstated at the end of the period of suspension upon the filing of an affidavit of compliance with the provisions of the disciplinary order. An attorney suspended for more than six months or disbarred may not resume practice until reinstated by order of the court."
[22] State ex rel. Okl. Bar Ass'n v. Smith, 1980 OK 126, ¶ 21, 615 P.2d 1014, 1018; State ex rel. Okl. Bar Ass'n v. Lowe, 1982 OK 20, ¶ 19, 640 P.2d 1361, 1362.
[23] State ex rel. Okl. Bar Ass'n v. Cummings, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; State ex rel. Okl. Bar Ass'n v. Hall, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.
[24] State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 9, 914 P.2d 644, 648; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 16, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Perceful, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.
[25] Factors to be taken into account in assessing an appropriate discipline are set forth in the Oklahoma Rules of Professional Conduct, 5 O.S. 1991 Ch.1, App. 3-A, Scope, which provides:

"Moreover, the Rules presuppose that whether or not discipline should be imposed for a violation, and the severity of a sanction, depend on all the circumstances, such as the wilfulness and seriousness of the violation, extenuating factors and whether there have been previous violations."
[1] State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 19, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Donnelly, 1992 OK 164, ¶ 14, 848 P.2d 543, 546; State ex rel. Okl. Bar Ass'n v. Colston, 1989 OK 74, ¶ 20, 777 P.2d 920, 925; State ex rel. Okl. Bar Ass'n v. Moss, 1983 OK 104, ¶ 12, 682 P.2d 205, 207.
[2] The provisions of Rule 7.7(a) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp. 1992 Ch.1, App.1 A, state:

"It is the duty of a lawyer licensed in Oklahoma to notify the General Counsel whenever discipline for lawyer misconduct has been imposed upon him/her in another jurisdiction, within twenty (20) days of the final order of discipline, and failure to report shall itself be grounds for discipline." (emphasis added)
[3] State ex rel. Okl. Bar Ass'n v. Jaques II, 2000 OK 57, ¶ 26, 11 P.3d 621, 625 ("Intentional deviation from the prescribed standards of ethical conduct gives greater cause for concern than mere negligence.").
[4] State ex rel. Okl. Bar Ass'n v. Cummings, 1993 OK 127, ¶ 29, 863 P.2d 1164, 1174; State ex rel. Okl. Bar Ass'n v. Hall, 1977 OK 117, ¶ 12, 567 P.2d 975, 978.
[5] State ex rel. Okl. Bar Ass'n v. Wolfe, 1997 OK 47, ¶ 15, 937 P.2d 988, 993; State ex rel. Okl. Bar Ass'n v. Holden, 1996 OK 88, ¶ 7, 925 P.2d 32, 36; State ex rel. Okl. Bar Ass'n v. Downing, 1993 OK 44, ¶ 16, 863 P.2d 1111, 1116.
[6] The pertinent portion of Rule 7.7(b) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992 Ch.1, App.1 A, states:

"... The documents [the order and other materials received by the Bar from the other jurisdiction] shall constitute the charge and shall be prima facie evidence the lawyer committed the acts therein described...."
[7] The pertinent portion of Rule 7.7(b) of the Rules Governing Disciplinary Proceedings, 5 O.S. Supp.1992 Ch.1, App.1 A, states:

"... The lawyer may also submit, in the interest of explaining his/her conduct or by way of mitigating the discipline which may be imposed upon him/her, a brief and/ or any evidence tending to mitigate the severity of discipline...."
[8] In his testimony before the trial panel, respondent states his belief that the record contains all the letters he received from the court clerk's office. Either his belief is wrong or there was no second letter in late March 1997.
[9] Patterson's wife had given birth to a premature baby on 7 March 1997. Respondent maintains that caring for the baby's needs interfered with his practice through much of 1997. Respondent also states that in October, when he was ordered by the Tenth Circuit to show cause, he was involved in a multi-defendant, out of state, securities case, which also interfered with his ability to respond to the Tenth Circuit's order.
[10] Cf. Strock v. Vanhorn, 919 F.Supp. 172, 173 (E.D.Pa.1996); Bank of Hawaii v. Shaw, 83 Hawai'i 50, 924 P.2d 544, 548 (Haw.Ct.App.1996).
[11] See the provisions of 5 O.S.1991 § 3, which state:

"It is the duty of an attorney and counselor:
First, ... to obey all lawful orders and writs of the court."
[12] See In re Kelley, 52 Cal.3d 487, 276 Cal.Rptr. 375, 801 P.2d 1126, 1131 (1990) ("Disobedience of a court order, whether as a legal representative or as a party, demonstrates a lapse of character and a disrespect for the legal system that directly relate to an attorney's fitness to practice law and serve as an officer of the court.").
[13] Louisiana State Bar Ass'n. v. Thalheim, 504 So.2d 822, 826 (La.1987).
[14] State ex rel. Okl. Bar Ass'n v. Eakin, 1995 OK 106, ¶ 9, 914 P.2d 644, 648; State ex rel. Okl. Bar Ass'n v. Bolton, 1994 OK 53, ¶ 16, 880 P.2d 339, 345; State ex rel. Okl. Bar Ass'n v. Perceful, 1990 OK 72, ¶ 5, 796 P.2d 627, 630.
[15] Disbarment has been imposed by this court in reciprocal disciplinary proceedings only for the most egregious misconduct, usually involving multiple violations and a recalcitrant or uncooperative respondent. See State ex rel. Okl. Bar Ass'n v. Bransgrove, 1998 OK 93, 976 P.2d 540; State ex rel. Okl. Bar Ass'n v. Katz, 1987 OK 4, 733 P.2d 406; State ex rel. Okl. Bar Ass'n v. Smith, 1984 OK 17, 681 P.2d 749.
[16] This court has generally imposed severe discipline for the unauthorized practice of law by a lawyer whom we have suspended. See State ex rel. Okl. Bar Ass'n v. Downing, 1993 OK 44, 863 P.2d 1111, in which we disbarred an attorney who engaged in the unauthorized practice of law during a period of suspension, lied to a client about the status of a case and about his ability to continue with the representation, and failed to act with reasonable diligence and competence. In State ex rel. Okl. Bar Assn. v. Wolfe, 1997 OK 47, 937 P.2d 988, we disbarred an attorney who, in addition to engaging in the unauthorized practice of law while under suspension, had a history of disciplinary problems, neglected client matters, refused to take responsibility for his actions, and disregarded the disciplinary process. In State ex rel. Okl. Bar Assn. v. Holden, 1996 OK 88, 925 P.2d 32, the respondent had disregarded the court's suspension order almost from the date it was issued and misrepresented his actions in his response to the grievance inquiries of the Bar. We imposed a suspension of two years and one day. But see State ex rel. Okl. Bar Ass'n v. O'Neal, 1993 OK 61, 852 P.2d 713. In that case, we determined that the appropriate discipline for the unauthorized practice of law while under a suspension by this court for non-payment of bar dues and non-compliance with the Mandatory Continuing Legal Education (MCLE) requirements was public censure where the only additional ethical violation was the respondent's failure to reply to the Bar's initial inquiry about his conduct.
[17] Cf. Holden, supra note 5 at ¶ 8, at 37.